**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Zachary T. Chrzan (SBN 329159)
zchrzan@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO and PHILLIP WHITE, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>MRS. GOOCH'S NATURAL FOOD MARKETS, INC., a California corporation and WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation,<br><br>        Defendants. | Case No. <br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et seq.*<br><br>2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS & PROFESSIONS CODE § 17500, *et seq.*<br><br>3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS & PROFESSIONS CODE § 17200, *et seq.*<br><br>4. UNJUST ENRICHMENT<br><br>5. COMMON LAW FRAUD<br><br>6. INTENTIONAL MISREPRESENTATION<br><br>7. NEGLIGENT MISREPRESENTATION<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Matthew Sinatro and Phillip White, individually and on behalf of all others similarly situated, bring this class action complaint against Mrs. Gooch's Natural Food Markets, Inc. and Whole Foods Market California, Inc. (collectively referred to herein as "Defendants") and allege as follows:

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## SUMMARY OF THE ACTION

1.     To increase profits at the expense of consumers and fair competition, Defendants

sell their popular macaroni and cheese products in oversized, opaque boxes that do not reasonably

inform consumers that they are half empty. Defendants' scam dupes unsuspecting consumers

across California and America to pay for empty space at premium prices and undercuts fair

competition. *See **Figure 1.*** The green shading represents the product fill. The remainder is

nonfunctional empty space, or "slack-fill."

***Figure 1.***





Empty Space (Slack Fill)

Macaroni & Cheese Product

CLASS ACTION COMPLAINT

2.       Defendants fail to comply with consumer protection and packaging statutes designed to prevent this scam, instead relying on their brand name and goodwill to further their deceptive practices. This class action aims to remedy Defendants' unfair business practice by (1) enjoining Defendant's use of nonfunctional slack-fill; and (2) providing injured consumers money lost as a result of Defendants' deceptive packaging. The Products at issue are Whole Foods 365 Organic Shells & Cheese and Whole Foods 365 Organic Macaroni & Cheese (Defendants' "Organic Products"), Whole Foods 365 Shells & Cheese and Whole Foods 365 Macaroni & Cheese (Defendants' "Conventional Products"), and all other macaroni and cheese products sold in opaque boxes by Defendants (collectively, the "Products") sold in California and the United States.

3.       Defendants market the Products in a systematically misleading manner by representing them as adequately filled when, in fact, they contain an unlawful amount of slack-fill. Defendants underfill the Products for no lawful reason. The purposes of this practice are (1) to save money (by using less product per box); and (2) to deceive consumers into purchasing Defendants' Products over their competitors' products. Defendants' slack-fill scheme not only harms tens of thousands of consumers, it also harms law-abiding competitors. Accordingly, Defendants have violated the California Consumers Legal Remedies Act, particularly California Civil Code Sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9). As such, Defendants have committed *per se* violations of Business and Professions Code Section 17200, *et seq*. and Business and Professions Code Section 17500, *et seq*. and Civil Code Section 1750, *et seq*.

4.       Plaintiffs and the Class Members have accordingly suffered injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein, and seek injunctive relief and restitution.

## CALIFORNIA STATE AND FEDERAL COURTS FIND SLACK-FILL VIOLATIONS MERITORIOUS AND APPROPRIATE FOR CLASS TREATMENT

5.       Several state and federal courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See Padilla v. Whitewave Foods Co.*, Case No. LA CV18-09327 JAK (JCx) (C.D. Cal. July 26, 2019) (defendant's FRCP 12(b)(6)

motion to dismiss slack-filled supplement container claims denied); *Matic v. United States Nutrition, Inc.*, Case No. CV 18-9592 PSG (AFMx) (C.D. Cal. Mar. 27, 2019) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled supplement container claims denied); *Merry v. Int'l Coffee & Tea, LLC*, Cal. Super. Case No. CIVDS1920749 (San Bernardino Cty. Jan. 27, 2020) (defendant's demurrer to slack-filled powder container claims overruled); *Iglesias v. Ferrara Candy Co.*, Case No. 3:17-cv-00849-VC (N.D. Cal. July 25, 2017) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Jujyfruits® and Lemonhead® candy box claims denied, and nationwide settlement class certified) (cert. granted Oct. 31, 2018); *Tsuchiyama v. Taste of Nature, Inc.*, Cal. Super. Case No. BC651252 (L.A. Cty. Feb. 28, 2018) (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough Bites® candy box claims denied, and nationwide settlement subsequently certified through Missouri court); *Gordon v. Tootsie Roll Indus.*, Case No. CV 17-2664 DSF (MRWx) (C.D. Cal. Oct. 4, 2017) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Junior Mints® and Sugar Babies® candy box claims denied); *Escobar v. Just Born, Inc.*, Case No. 2:17-cv-01826-BRO-PJW (C.D. Cal. June 12, 2017) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Mike N' Ike® and Hot Tamales® candy box claims denied, and California class action certified) (cert. granted Mar. 25, 2019); *Thomas v. Nestle USA, Inc.*, Cal. Super. Case No. BC649863 (L.A. Cty. Apr. 29, 2020) (certifying as a class action slack-fill claims brought under California consumer protection laws).

## **JURISDICTION**

6.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

7.      Defendants are subject to personal jurisdiction in California based upon sufficient minimum contacts that exist between Defendants and California. Defendants are authorized to do and are doing business in California.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VENUE**

8.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiffs reside in this District, Plaintiffs purchased the Product in this District, and Defendants made the challenged false representations in this District. Moreover, Defendants receive substantial compensation from sales in this District, and Defendants made numerous misrepresentations that had a substantial effect in this District, including but not limited to, labeling and packaging advertisements.

**PARTIES**

9.     Plaintiff Sinatro is, and at all times relevant hereto was, a citizen of California, residing in the county of San Francisco. Plaintiff Sinatro purchased Whole Foods 365 Shells & Cheese (one of Defendants' Conventional Products) at a Whole Foods store in San Francisco, California in 2020. In making this purchase, Plaintiff Sinatro relied upon the opaque packaging, including the size of the box. The size of the box was prepared and approved by Defendants and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff Sinatro had known that the Conventional Product box contained nonfunctional slack-fill, he would not have purchased the Product, let alone paid for macaroni and cheese product he never received. In early 2021, Plaintiff Sinatro noticed that Defendants had changed the labeling and packaging of their Conventional Product. The new packaging was a box of a similar size, but with a different front label design. Believing that one of the changes accompanying the new labeling and packaging was a reduction in slack-fill, Plaintiff Sinatro purchased the newly named Whole Foods 365 Macaroni & Cheese conventional Product (Defendants' other Conventional Product). In making this purchase, Plaintiff Sinatro relied upon the opaque packaging, including the size of the box. The new packaging and the appearance of changes to the Conventional Product were prepared and approved by Defendants and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff Sinatro had known that the Conventional Product's new box contained a similar amount

of nonfunctional slack-fill to the old box, he would not have purchased the Conventional Product, let alone paid for macaroni and cheese product he never received.

10.    Plaintiff White is, and at all times relevant hereto was, a citizen of California residing in the county of Santa Clara. Plaintiff White purchased the Whole Foods 365 Organic Shells & Cheese (one of Defendants' Organic Products) at a Whole Foods store in Santa Clara, California in 2020. In making his purchase, Plaintiff White relied upon the opaque packaging, including the size of the box. The box and its label were prepared and approved by Defendants and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff White had known that the Organic Product box contained nonfunctional slack-fill, he would not have purchased the Organic Product, let alone paid for macaroni and cheese product he never received. In early 2021, Plaintiff White noticed that Defendants had changed the labeling and packaging of their Organic Product. The new packaging was a box of a similar size, but with a different front label design. Believing that one of the changes accompanying the new labeling and packaging was a reduction in slack-fill, Plaintiff White purchased the newly named Whole Foods 365 Organic Macaroni & Cheese Product (Defendants' other Organic Product). In making this purchase, Plaintiff White relied upon the opaque packaging, including the size of the box. The new packaging and label of the Organic Product were prepared and approved by Defendants and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff White had known that the Organic Product's new box contained a similar amount of nonfunctional slack-fill to the old box, he would not have purchased the newly labeled Organic Product, let alone paid for macaroni and cheese product he never received.

11.    Whole Foods Market California, Inc. is a California corporation. Whole Foods Market California, Inc. maintains its principal place of business at 6401 Hollis Street, Suite 150, Emeryville, CA 94608. Mrs. Gooch's Natural Food Markets, Inc. is a California corporation. Mrs. Gooch's Natural Food Markets, Inc. maintains its principal place of business at 207 Goode Avenue, 7th Floor, Glendale, CA 91203. Defendants, directly and through their agents, conduct business nationwide. Defendants have substantial contacts with and receive substantial benefits

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1    and income from and through the State of California. Defendants are the owners, manufacturers,

2    and distributors of the Products, and are the companies that created and/or authorized the false,

3    misleading, and deceptive packaging for the Products.

4                                   **FACTUAL ALLEGATIONS**

5            12.     The amount of product inside any product packaging is material to any consumer

6    seeking to purchase that product. The average consumer spends only 13 seconds deciding whether

7    to make an in-store purchase;[1] this decision is heavily dependent on a product's packaging,

8    including the package dimensions. Research has demonstrated that packages that seem larger are

9    more likely to be purchased because consumers expect package size to accurately represent the

10   quantity of the good being purchased.[2]

11           13.     Accordingly, Defendants chose a certain size box for their Products to convey to

12   consumers that they are receiving a certain and substantial amount of macaroni and cheese,

13   commensurate with the size of the box. Such representations constitute an express warranty

14   regarding the Products' contents.

15           14.     Slack-fill is the difference between the actual capacity of a container and the volume

16   of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled

17   to less than its capacity for illegitimate or unlawful reasons.

18           15.     Defendants falsely represent the quantity of macaroni and cheese in each of the

19   Products' opaque boxes through their packaging. The size of each box leads the reasonable

20   consumer to believe he or she is purchasing a box full of product when, in reality, what he or she

21   actually receives is one-half of what is represented by the size of the box.

22           16.     Even if Plaintiffs and other reasonable consumers of the Products had a reasonable

23   opportunity to review, prior to the point of sale, other representations of quantity, such as net

24   weight or serving disclosures, they did not and would not have reasonably understood or expected

25

26   ───────────────

27   [1] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015,
     https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-
     window./.

28   [2] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the
     Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

7

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

such representations to translate to a quantity of macaroni and cheese product meaningfully different from their expectation of a quantity of product commensurate with the size of the box.

17.    Prior to the point of sale, the Products' packaging does not allow for a visual or audial confirmation of the contents of the Products. The Products' opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Products before opening the box, the reasonable consumer would not be able to discern the presence of any nonfunctional slack fill, let alone the approximate 48-56% nonfunctional slack-fill that is present in the Products, depending on the variety.

18.    The other information that Defendants provide about the quantity of product on the front and back labels of the Products does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Products as compared to the size of the box itself. For instance, the Products' packaging does not have any information that would provide Plaintiffs with any meaningful insight as to the amount of product to be expected, such as a fill line.

19.    Disclosures of net weight and serving sizes in ounces or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of macaroni and cheese contained in the Products' boxes that would be different from the reasonable consumer's expectation that the quantity of product is commensurate with the size of the box.

20.    Plaintiffs would not have purchased the Products had they known that the Products contained slack-fill that serves no functional or lawful purpose.

21.    As pictured *supra*, Defendants uniformly underfill the Products' boxes, rendering about 48-56% of each box, depending on the variety, slack-fill, none of which serves a functional or lawful purpose.

**None of the Slack-Fill Statutory Exceptions Apply to the Products**

22.    Pursuant to 21 C.F.R. § 100.100, "a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading." Opaque containers "shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." *Id.*

Nonfunctional slack-fill is empty space within packaging that is filled to less than its capacity for reasons other than provided for in the six enumerated slack-fill exceptions.

**A.    21 C.F.R. § 100.100(a)(1) – Protection of the Contents**

23.    The slack-fill contained in the Products' packaging does not protect the contents of the package. In fact, the greater the amount of slack-fill, the more room the contents have to bounce around during shipping and handling, making it more likely that the contents will break or sustain damage. As such, the slack-fill present in the Products' packaging makes the macaroni and cheese product more, not less, susceptible to damage.

**B.    21 C.F.R. § 100.100(a)(2) – Requirements of the Machines**

24.    The machines used to package the Products would not be affected if there was more macaroni and cheese added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

25.    Because the Organic Products are only filled to approximately 52% of their capacity, and the Conventional Products are only filled to approximately 44% of their capacity, Defendants can increase the Products' fill level significantly without affecting how the boxes are sealed, or they can disclose the fill-level on the outside labeling to inform consumers of the amount of macaroni and cheese actually in the box, consistent with the law.

**C.    21 C.F.R. § 100.100(a)(3) – Settling During Shipping and Handling**

26.    The slack-fill present in the Products' containers is not a result of the macaroni and cheese product settling during shipping and handling. Given the Products' density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

27.    The contents of the Products are of a great enough density that any slack-fill present at the point of sale was present at the time of filling the containers and packaging the contents.

**D.    21 C.F.R. § 100.100(a)(4) – Specific Function of Package**

28.    The packages do not perform a specific function that necessitates the slack-fill. This safe harbor would only apply if a specific function is "inherent to the nature of the food and is

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the food. Defendants do not communicate any such function to consumers.

**E.      21 C.F.R. § 100.100(a)(5) – Reusable Container**

29.      The Products' packaging is not reusable or of any significant value to the Products independent of their function to hold the macaroni and cheese product. The Products' containers are paperboard boxes, intended to be discarded immediately after the macaroni and cheese is eaten.

**F.      21 C.F.R. § 100.100(a)(6) – Inability to Increase Fill or Decrease Box Size**

30.      The slack-fill present in the Products' containers does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

31.      Defendants can easily increase the quantity of macaroni and cheese product contained in each box (or, alternatively, decrease the size of the containers) by approximately 56% (for the Conventional Products) to 48% (for the Organic Products) more volume.

32.      Because none of the safe harbor provisions apply to the Products' packaging, the packages contain nonfunctional slack-fill in violation of 21 C.F.R. § 100.100 and are, therefore, filled as to be misleading. Plaintiffs shall proffer definitive expert testimony to establish these facts once this case reaches the merits.

**The Conventional Product Demonstrates that the Organic Product is Particularly Deceptive**

33.      The Organic Product is sold in boxes of identical size and shape as the Conventional Products, with virtually identical pasta and powder ingredients. Said another way, the ingredients in the Organic Products take up no more and no less room than ingredients in the Conventional Products.

34.      Despite the near-identical nature of the ingredients in the Conventional and Organic Products, the Organic Products are substantially less full than their conventional counterparts.

35.      Defendants are intentionally underfilling the boxes of the Organic Products, hoping to surreptitiously pass off the increase in ingredient price to consumers without their knowledge or consent.

36.    Reasonable consumers do not spend several minutes analyzing product details to confirm whether companies are secretly passing off price premiums of more expensive, organic ingredients. Rather, consumers reasonably assume the size of the box is a proxy for the amount of product contained therein.

37.    True and correct representations of Defendants' Organic and Conventional Products are provided below. *See **Figure 2.*** The green shading represents product fill, and the red shading represents empty space, or slack-fill.

***Figure 2.***





Empty Space (Slack Fill)


Macaroni & Cheese Product

CLASS ACTION COMPLAINT

38.     Defendants' Conventional Products are sold in identical packaging to that of the Organic Products, i.e., opaque boxes of identical size, shape, volume, and material. Defendants' Conventional Product is packaged using nearly identical fill and heated glue enclosing machines to those of the Organic Products.

39.     Defendants' Conventional Products are of similar size, shape, and density as that of the Organic Products. While the Conventional Products still contain unlawful amounts of slack-fill, the Organic Product contains approximately 8% more slack-fill than the Conventional Product.

40.      Defendants' Conventional packaging provides additional evidence that the slack-fill present in the Organic Products' packaging is nonfunctional to the tune of 52%.

41.     Defendants' Conventional Product packaging provides evidence that Defendants have reasonable alternative designs available to them in their packaging of the Organic Products.

42.     Plaintiffs did not expect that the Products would contain nonfunctional slack-fill, especially given that nonfunctional slack-fill, as opposed to functional slack-fill, is prohibited by federal law and California law.

43.     The Products are made, formed, and filled so as to be misleading. The Products are, therefore, misbranded.

44.     The slack-fill contained in the Products does not serve a legitimate or lawful purpose.

45.     Defendants' false, deceptive, and misleading label statements are unlawful under state and federal consumer protection and packaging laws.

46.     Defendants intended for Plaintiffs and the Class members to be misled.

47.     Defendants' misleading and deceptive practices proximately caused harm to Plaintiffs and the Class.

//

//

//

//

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## CLASS ALLEGATIONS

48.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated, and as members of Classes defined as follows:

> All residents of the United States who, within the relevant statute of limitations periods, purchased the Products ("Nationwide Class"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("California Subclass").

("Nationwide Class" and "California Subclass," collectively, "Class").

49.     Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

50.     Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

51.     **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

52.     **Common Questions Predominate:** There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members.  Common questions of law and fact include, but are not limited to, the following:

a. The true nature and amount of product contained in each Products' packaging;

b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

c. Whether Defendants misrepresented the approval of the FDA, United States Congress, and California Legislature that the Products' packaging complied with federal and California slack-fill regulations and statutes;

d. Whether the Products contain nonfunctional slack-fill in violation of 21 C.F.R. § 100.100, *et seq.*;

e. Whether the Products contain nonfunctional slack-fill in violation of California Business and Professions Code Section 12606.2, *et seq.;*

f. Whether Defendants' conduct is an unlawful business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

g. Whether Defendants' conduct is a fraudulent business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

h. Whether Defendants' conduct is an unfair business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

i. Whether Defendants' advertising is untrue or misleading within the meaning of Business and Professions Code Section 17500, *et seq.*;

j. Whether Defendants made false and misleading representations in their advertising and labeling of the Products;

k. Whether Defendants knew or should have known that the misrepresentations alleged herein were false;

l. Whether Plaintiffs and the Class paid more money for the Products than they actually received;

m. How much more money Plaintiffs and the Class paid for the Products than they actually received;

n. Whether Defendants committed common law fraud; and

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

o. Whether Defendants were unjustly enriched at the expense of Plaintiffs and the Class members;

53. **Typicality:** Plaintiffs' claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendants are uniform and consistent and are contained in advertisements and on packaging that was seen and relied on by Plaintiffs and members of the Class.

54. **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation. Plaintiffs' Counsel prosecuted the largest slack-fill nationwide class action settlement to date in 2021. *Thomas v. Nestle USA, Inc.*, Cal. Super. Case No. BC649863 (L.A. Cty. Apr. 29, 2020).

55. Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' false, deceptive, and misleading representations. Plaintiffs purchased the Products because of the size of the box and the product label, which they believed to be indicative of the amount of product contained therein as commensurate with the size of the box. Plaintiffs relied on Defendants' representations and would not have purchased the Products if they had known that the packaging, labeling, and advertising as described herein was false and misleading.

56. The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions and by internet publication, radio, newspapers, and magazines.

57. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b. Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendants.

58.    Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

59.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

60.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT ONE

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW,

### CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*

61.    Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

62.    Plaintiffs bring their claims individually and on behalf of the Class.

63.    Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing, established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393.

64.     The FDA has implemented regulations to achieve this objective. *See, e.g.*, 21 C.F.R. § 101.1 *et seq.*

65.     The legislature of California has incorporated 21 C.F.R. § 100.100, which prohibits nonfunctional slack-fill, into the State's Business and Professions Code at Section 12606.2 *et seq.*

66.     The FDA enforces the FDCA and accompanying regulations; "[t]here is no private right of action under the FDCA." *Ivie v. Kraft Foods Global, Inc.,* 961 F. Supp. 2d 1033, 1037 (N.D. Cal. 2013) (internal citations omitted).

67.     In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling. *See, e.g.*, 21 U.S.C. § 343 *et. seq.*

68.     Plaintiffs are not suing under the FDCA, but under California state law.

69.     The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Health and Safety Code Section 109875 *et seq.*, has adopted wholesale the food labeling requirements of the FDCA and NLEA as the food regulations of California. Cal. Health & Safety Code § 110100.

70.     The Sherman Law declares any food to be misbranded if it is false or misleading in any particular, if the labeling does not conform with the requirements for nutrition labeling set forth in certain provisions of the NLEA. Cal. Health & Safety Code §§ 110660, 110665, 110670.

71.     The Unfair Competition Law ("UCL") prohibits "any unlawful, unfair . . . or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A.     "Unfair Prong"

72.     Under the UCL, California Business and Professions Code Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).

73.     Defendants' action of leaving 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill in their Products does not confer any benefit to consumers.

//

//

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

74.     Defendants' action of leaving 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill in their Products causes injuries to consumers, who do not receive a quantity of macaroni and cheese commensurate with their reasonable expectations.

75.     Defendants' action of leaving 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill in their Products causes injuries to consumers, who do not receive a level of hunger satiety commensurate with their reasonable expectations.

76.     Defendants' action of leaving 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill in their Products causes injuries to consumers, who end up overpaying for the Products and receiving a quantity of macaroni and cheese less than what they reasonably expected to receive.

77.     Consumers cannot avoid any of the injuries caused by the 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill in Defendants' Products.

78.     Accordingly, the injuries caused by Defendants' inclusion of 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill in the Products outweigh any benefits.

79.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

80.     Here, Defendants' conduct of including 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill in the Products' packaging has no utility and financially harms purchasers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

81.     Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc*., 504 F. 3d 718, 735 (9th Cir. 2007) (internal citations omitted).

//

//

82.     The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in the State's Business and Professions Code Section 12606.2 and Health and Safety Code Section 110100.

83.     The 44% (Conventional Products) to 52% (Organic Products) of nonfunctional slack-fill contained in the Products is tethered to a legislative policy declared in California according to the State's Business and Professions Code Section 12606.2 and Health and Safety Code Section 110100.

84.     Defendants' packaging of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

85.     Defendants knew or should have known of their unfair conduct.

86.     As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

87.     There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have used packaging appropriate for the amount of macaroni and cheese product contained within the Products.

88.     All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

89.     Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiffs paid an unwarranted premium for this product. Specifically, Plaintiffs paid for 44% (Conventional Products) to 52% (Organic Products) of macaroni and cheese product they never received. Plaintiffs would not have purchased the Products if they had known that the Products' packaging contained nonfunctional slack-fill.

### B.     "Fraudulent" Prong

90.     California Business and Professions Code Section 17200, et seq., considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

91.     Defendants' conduct of packaging the Products with 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill is likely to deceive members of the public.

92.     Defendants' packaging of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct.

93.     Defendants knew or should have known of their fraudulent conduct.

94.     As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute a fraudulent business practice in violation of California Business and Professions Code Section 17200.

95.     Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have used packaging appropriate for the proportion of product contained therein.

96.     All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

97.     Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct. Plaintiffs paid an unwarranted premium for these products. Specifically, Plaintiffs paid for 44% (Conventional Products) to 52% (Organic Products) of macaroni and cheese product they never received. Plaintiffs would not have purchased the Products if they had known that the boxes contained nonfunctional slack-fill.

### C.     "Unlawful" Prong

98.     California Business and Professions Code Section 17200, *et seq.*, identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

99.     Defendants' packaging of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.*, California Business and Professions Code Section 17500, *et seq.*, and 21 C.F.R § 100.100.

//

100.    Defendants' packaging of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

101.    Defendants knew or should have known of their unlawful conduct.

102.    As alleged in the preceding paragraphs, the misrepresentations by Defendants alleged herein constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

103.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have used packaging appropriate for the amount of macaroni and cheese product contained therein.

104.    All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

105.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiffs paid an unwarranted premium for this product. Specifically, Plaintiffs paid for 44% (Conventional Products) to 52% (Organic Products) of macaroni and cheese product they never received. Plaintiffs would not have purchased the Product if they had known that the packaging contained nonfunctional slack-fill.

106.    As a result of the business acts and practices described herein, Plaintiffs and members of the Class, pursuant to Business and Professions Code Section 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendants and such other orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

   a.   Plaintiffs and members of the Class are entitled to equitable relief, as no adequate remedy at law exists.

      (1) The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the False Advertising Law ("FAL") and Consumers Legal Remedies Act

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1    ("CLRA"). Thus, Class members who purchased the Products between 3 and 4

2    years prior to the filing of the complaint will be barred from the Class if

3    equitable relief were not granted under the UCL.

4    (2) The scope of actionable misconduct under the unfair prong of the UCL is

5    broader than the other causes of action asserted herein to include, for example,

6    the overall unfair marketing scheme of underfilling the Products' packaging.

7    Thus, Plaintiffs and Class members may be entitled to restitution under the

8    UCL, while not entitled to damages under other causes of action asserted herein

9    (e.g., the FAL requires actual or constructive knowledge of the falsity; the

10   CLRA is limited to certain types of plaintiffs (an individual who seeks or

11   acquires, by purchase or lease, any goods or services for personal, family, or

12   household purposes) and other statutorily enumerated conduct).

13   (3) Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class

14   because Defendants continue to deceptively underfill the Products' packaging.

15   Injunctive relief is necessary to prevent Defendants from continuing to engage

16   in this unfair, fraudulent, and/or unlawful conduct described herein and to

17   prevent future harm—none of which can be achieved through available legal

18   remedies. Further, injunctive relief, in the form of packaging or label

19   modifications, is necessary to dispel public misperception about the Products

20   that has resulted from years of Defendants' unlawful marketing efforts. Such

21   modifications could include, but are not limited to, shrinking the packaging,

22   adding more macaroni and cheese to the packaging, or adding a yield chart to

23   the side or back label. Such relief is not available through a legal remedy, as

24   monetary damages may be awarded to remedy past harm (i.e., purchasers who

25   have been misled), while injunctive relief is necessary to remedy future harm

26   (i.e., prevent future purchasers from being misled), under the current

27   circumstances where the dollar amount of future damages is not reasonably

28   ascertainable at this time. Plaintiffs are currently unable to accurately quantify

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

the damages caused by Defendants' future harm (i.e., the dollar amount that Plaintiffs and Class members will pay for the underfilled Products), rendering injunctive relief a necessary remedy.

107.   Pursuant to Civil Code Section 3287(a), Plaintiffs and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class are entitled to interest in an amount according to proof.

## COUNT TWO

### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF
### CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, *et seq*.

108.   Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

109.   California's False Advertising Law, Business and Professions Code Section 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

110.   Defendants knowingly manipulated the physical dimensions of the Products' box, or stated another way, under-filled the amount of macaroni and cheese product in Products, by including 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill as a means to mislead the public about the amount of macaroni and cheese product contained in each package.

111.   Defendants controlled the packaging of the Products. They knew or should have known, through the exercise of reasonable care, that their representations about the quantity of macaroni and cheese product contained in the Products were untrue and misleading.

//

112.   Defendants' action of packaging the Products with 44% (Conventional Products) to 52% (Organic Products) nonfunctional slack-fill instead of including more macaroni and cheese content in the box, or decreasing the size of the box, is likely to deceive the general public.

113.   Defendants' actions were false and misleading, such that the general public is and was likely to be deceived, in violation of Section 17500.

114.   As a direct and proximate result of Defendants' conduct alleged herein in violation of the FAL, Plaintiffs and members of the Class, pursuant to Section 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendants and requiring Defendants to disclose the true nature of their misrepresentations.

      a.   Plaintiffs and members of the Class are entitled to equitable relief, as no adequate remedy at law exists.

          (1) The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Products for non-personal, non-family, and non-household purposes. Thus, Plaintiffs and Class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA.

          (2) Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendants continue to deceptively underfill the Products' packaging. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more macaroni and cheese to the packaging, or adding a yield chart to the side or back label. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are currently unable to accurately quantify the damages caused by Defendants' future harm (i.e., the dollar amount that Plaintiffs and Class members overpay for the underfilled Products), rendering injunctive relief a necessary remedy.

115.   Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations. Plaintiffs purchased the Products in reliance upon the claims by Defendants that the Products were of the quantity represented by Defendants' packaging and advertising. Plaintiffs would not have purchased the Products if they had known that the claims and advertising as described herein were false.

116.   Plaintiffs and members of the Class also request an order requiring Defendants to disgorge their ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interests and attorneys' fees.

## COUNT THREE

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, *et seq*.

117.   Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

118.   Plaintiffs brings their claims individually and on behalf of the Class.

119.   The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

120.   The practices described herein, specifically Defendants' packaging, advertising, and sale of the Products, were intended to result and did result in the sale of the Products to the consuming public and violated and continue to violate Sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by (1) misrepresenting the approval of the Products as compliant with 21 C.F.R § 100.100, California Business and Professions Code Section 12606.2,

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1  and the Sherman Law; (2) representing the Products have characteristics and quantities that they

2  do not have; (3) advertising and packaging the Products with intent not to sell them as advertised

3  and packaged; and (4) representing that the Products have been supplied in accordance with a

4  previous representation as to the quantity of macaroni and cheese product contained within each

5  box, when they have not.

6      121.   Defendants fraudulently deceived Plaintiffs and the Class by representing that the

7  Products' packaging, which includes 44% (Conventional Products) to 52% (Organic Products)

8  nonfunctional slack-fill, conforms to federal and California slack-fill regulations and statutes

9  including the Sherman Law, California Business and Professions Code Section 12606.2, and 21

10  C.F.R. § 100.100.

11     122.   Defendants packaged the Products in boxes that contain 44% (Conventional

12  Products) to 52% (Organic Products) nonfunctional slack-fill and made material

13  misrepresentations to fraudulently deceive Plaintiffs and the Class.

14     123.   Defendants fraudulently deceived Plaintiffs and the Class by misrepresenting the

15  Products as having characteristics and quantities which they do not have, i.e., that the Products are

16  free of nonfunctional slack-fill when they are not. In doing so, Defendants intentionally

17  misrepresented and concealed material facts from Plaintiffs and the Class. Said misrepresentations

18  and concealment were done with the intention of deceiving Plaintiffs and the Class and depriving

19  them of their legal rights and money.

20     124.   Defendants fraudulently deceived Plaintiffs and the Class by packaging and

21  advertising the Products with intent not to sell them as advertised and by intentionally under-

22  filling the Products' boxes and replacing macaroni and cheese product with nonfunctional slack-

23  fill. In doing so, Defendants intentionally misrepresented and concealed material facts from

24  Plaintiffs and the Class. Said misrepresentations and concealment were done with the intention of

25  deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

26     125.   Defendants fraudulently deceived Plaintiffs and the Class by representing that the

27  Products were supplied in accordance with an accurate representation as to the quantity of

28  macaroni and cheese product contained therein when they were not. Defendants presented the

physical dimensions of the Products' packaging to Plaintiffs and the Class before the point of purchase and gave Plaintiffs and the Class a reasonable expectation that the quantity of product contained therein would be commensurate with the size of packaging. In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiffs and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

126.   Defendants knew or should have known, through the exercise of reasonable care, that the Products' packaging was misleading.

127.   Defendants' actions as described herein were done with conscious disregard of Plaintiffs' rights, and Defendants were wanton and malicious in their concealment of the same.

128.   Defendants' packaging of the Products was a material factor in Plaintiffs' and the Class's decisions to purchase the Products. Based on Defendants' packaging of the Products, Plaintiffs and the Class reasonably believed that they were getting more product than they actually received. Had they known the truth of the matter, Plaintiffs and the Class would not have purchased the Products.

129.   Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' unfair, unlawful, and fraudulent conduct. Specifically, Plaintiffs paid for macaroni and cheese product they never received. Plaintiffs would not have purchased the Products had they known the boxes contained nonfunctional slack-fill.

130.   Plaintiffs respectfully request that the Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Section 1780(a)(2). In addition, Defendants should be compelled to provide restitution and damages to consumers who paid for Products that are not what they expected to receive due to Defendants' misrepresentations.

    a.   Plaintiffs and members of the Class are entitled to equitable relief, as no adequate remedy at law exists.

       (1) Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendants continue to deceptively underfill the Products' packaging.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Injunctive relief is necessary to prevent Defendants from continuing to engage in the unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more macaroni and cheese to the packaging, or adding a yield chart to the side or back label. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are currently unable to accurately quantify the damages caused by Defendants' future harm (i.e., the dollar amount that Plaintiffs and Class members overpay pay for the underfilled Products), rendering injunctive relief a necessary remedy.

131.   By letters dated March 9, 2020, and June 17, 2022, Defendants were notified of their false and misleading claims pursuant to California Civil Code Section 1782(a).

## COUNT FOUR

## RESTITUTION BASED ON QUASI-CONTRACT/UNJUST ENRICHMENT

132.   Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length.

133.   Plaintiffs bring this cause of action individually and on behalf of the members of the Class against Defendants.

134.   By means of Defendants' wrongful conduct alleged herein, Defendants knowingly sold the Products to Plaintiffs and members of the Class in a manner that was unfair, unconscionable, and oppressive.

CLASS ACTION COMPLAINT

135.   Defendants knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and members of the Class.

136.   As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

137.   Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the false, deceptive, and misleading conduct alleged herein.

138.   Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, without justification, from selling the Products to Plaintiffs and members of the class in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under such circumstances constitutes unjust enrichment.

139.   The financial benefits derived by Defendants rightfully belong to Plaintiffs and members of the Class. Defendants should be compelled to return in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by Defendants.

140.   Plaintiffs and members of the Class have no adequate remedy at law.

## COUNT FIVE

### COMMON LAW FRAUD

141.   Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs and incorporate the same as if set forth herein at length.

142.   Plaintiffs bring this cause of action individually and on behalf of the members of the Class against Defendants.

143.   Defendants have willfully, falsely, and knowingly filled and packaged the Products in a manner indicating that the Products are sufficiently filled with an amount of macaroni and cheese product commensurate with the size of the container. However, the Products contain 44% (Conventional Products) to 52% (Organic Products) nonfunctional and unlawful slack-fill.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Defendants have misrepresented the quantity of macaroni and cheese product contained in the Products.

144.   Defendants' misrepresentations are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making his or her purchase decision), because they relate to the quantity of macaroni and cheese product contained in the Products.

145.   Defendants knew of, or showed reckless disregard for, the fact that the Products contained a substantial amount of nonfunctional slack-fill.

146.   Defendants intended for Plaintiffs and the Class to rely on these representations, as evidenced by Defendants' manufacturing of packaging that is substantially larger than necessary to hold the volume of the contents contained therein.

147.   Plaintiffs and the Class have reasonably and detrimentally relied on Defendants' misrepresentations when purchasing the Products and, had they known the truth, they would not have purchased the Products or would have paid significantly less for the Products.

148.   Therefore, as a direct and proximate result of Defendants' fraud, Plaintiffs and members of the Class have suffered injury in fact.

**COUNT SIX**

**INTENTIONAL MISREPRESENTATION**

149.   Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs and incorporate the same as if set forth herein at length.

150.   Plaintiffs bring this cause of action individually and on behalf of all members of the Class against Defendants.

151.   Defendants have filled and packaged the Products in a manner indicating that the Products are adequately filled with macaroni and cheese product. However, the Products contain 44% (Conventional Products) to 52% (Organic Products) nonfunctional and unlawful slack-fill. Defendants misrepresented the quantity of macaroni and cheese product contained within the Products' packaging.

//

152.   Defendants' misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quantity of product received by consumers. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

153.   At all relevant times when such misrepresentations were made, Defendants knew or should have known that the representations were misleading.

154.   Defendants intended for Plaintiffs and the Class to rely on the size and style of the Products' packaging, as evidenced by Defendants' intentional manufacturing, marketing, and selling of packaging that is significantly larger than is necessary to contain the volume of the contents within them.

155.   Plaintiffs and members of the Class reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Products, and had they known the truth, they would not have purchased the Products or would have purchased them at significantly lower prices.

156.   As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiffs and members of the Class have suffered injury in fact.

## COUNT SEVEN

## NEGLIGENT MISREPRESENTATION

157.   Plaintiffs repeat and reallege all of the allegations contained above and incorporate the same as if set forth herein at length.

158.   Plaintiffs bring this cause of action individually and on behalf of the Class against Defendants.

159.   Defendants have filled and packaged the Products in a manner indicating that the Products are adequately filled with macaroni and cheese product. However, the Products contain 44% (Conventional Products) to 52% (Organic Products) less macaroni and cheese product than required and instead contain a substantial amount of nonfunctional slack-fill. Therefore, Defendants have misrepresented the amount of macaroni and cheese product contained in the Products.

CLASS ACTION COMPLAINT

160. Defendants' misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quantity of product received by the consumer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

161. At all relevant times when such misrepresentations were made, Defendants knew or should have known that the Products were not adequately filled with macaroni and cheese, but instead contained substantial amounts of nonfunctional slack-fill.

162. Defendants intended for Plaintiffs and the Class to rely on the size and style of the Products' packaging, as evidenced by Defendants' packaging that is significantly larger than is necessary to contain the volume of the macaroni and cheese product therein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment and relief on all causes of action as follows:

A. An order enjoining Defendants from continuing to label, package, and/or advertise the Products as challenged herein so as to dispel consumer deception;

B. Damages against Defendants in an amount to be determined at trial, together with pre- and post- judgement interest at the maximum rate allowable by law on any amounts awarded;

C. Restitution and/or disgorgement in an amount to be determined at trial;

D. Reasonable attorneys' fees and costs; and

E. Granting such other and further as may be just and proper.

//
//
//
//
//
//

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all triable issues.

DATED: June 17, 2022                    **CLARKSON LAW FIRM, P.C.**

_/s/ Zachary Chrzan_____
Ryan J. Clarkson, Esq.
Zachary Chrzan, Esq.

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT