**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Zachary T. Chrzan (SBN 329159)
zchrzan@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO, PHILLIP WHITE, and JESSICA PROST, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-03603-TLT |
| | *Hon. Trina L. Thompson* |
| Plaintiffs, | |
| v. | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| MRS. GOOCH'S NATURAL FOOD MARKETS, INC., a California corporation, WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation, WHOLE FOODS MARKET, INC., a Texas corporation, WHOLE FOODS MARKET GROUP, INC., a Delaware corporation, | Hearing Information: |
| | Date: November 8, 2022 |
| | Time: 2:00 p.m. |
| Defendants. | Courtroom: 9, 19th Floor |

Plaintiffs Matthew Sinatro, Phillip White, and Jessica Prost ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel Ryan J. Clarkson and Zachary T. Chrzan of Clarkson Law Firm, P.C., hereby submit the following memorandum in opposition to Defendants Mrs. Gooch's Natural Food Markets, Inc., Whole Foods Market California, Inc., Whole Foods Market, Inc., and Whole Foods Market Group, Inc.'s ("Defendants") Motion to Dismiss First Amended Complaint (Dkt. 39).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................. 1

II.   FACTS .................................................................................................. 2

III.  LEGAL STANDARDS ........................................................................ 2

IV.   ARGUMENT ....................................................................................... 3

    A.    Plaintiffs Have Plausibly Alleged Violations of the UCL, FAL, and CLRA .......... 3

        1.    The Merits of Plaintiffs' Factual Allegations Are not Before the Court ......... 3

        2.    The Products' Packaging is Deceptive to the Reasonable Consumer.............. 3

        3.    Net Weight and Rear-Label Serving Disclosures Do Not Dispel Deception ................ 6

        4.    Defendants' Cases Are Distinguishable and Incorrectly Decided ................ 7

        5.    The Products' Packaging Contains Nonfunctional Slack-Fill ..................... 10

    B.    Defendants Prematurely Seek to Strike Plaintiffs' Nationwide Claims .............. 13

    C.    Plaintiffs Have Standing to Sue Defendant WFMI  ................................. 15

        1.    Plaintiffs Adequately Pleaded Article III and Statutory Standing ............ 15

        2.    Plaintiffs  Have Standing to Seek Injunctive Relief ....................... 16

    D.    Plaintiffs' Common Law Claims Survive ......................................... 17

        1.    Plaintiffs' Fraud and Intentional or Negligent Misrepresentation Claims...... 17

        2.    Plaintiffs' Claim for Unjust Enrichment..................................... 18

    E.    The Court Has Personal Jurisdiction Over Defendant WFMI ...................... 19

        1.    The Court Has General Jurisdiction Over Defendant WFMI..................... 19

        2.    This Court has Specific Jurisdiction Over Defendant WFMI ................... 21

    F.    The Court Should Grant Plaintiffs Leave to Conduct Jurisdictional Discovery ... 22

    G.    The Court Has Subject Matter Jurisdiction Over Plaintiffs' Claims............... 24

V.    IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND ............... 25

VI.   CONCLUSION ................................................................................... 26

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

**TABLE OF AUTHORITIES**

**Cases**                                                                  **Page No.**

*American Civil Liberties Union of Florida, Inc. v. City of Sarasota*,
   859 F.3d 1337 (11th Cir. 2017) .................................................................... 23

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) .............................................................. 17, 18

*Augustine v. Talking Rain Bev. Co.*,
   386 F. Supp. 3d 1317 (S.D. Cal. 2019) ...................................................... 16

*Banh v. Am. Honda Motor Co., Inc.*,
   2019 WL 8683361 (C.D. Cal. Dec. 17, 2019) .......................................... 13

*Barnes v. Nat. Organics, Inc.*,
   2022 U.S. Dist. LEXIS 169864 (C.D. Cal. Sep. 13, 2022) ....................... 18

*Barrett v. Optimum Nutrition*,
   2022 U.S. Dist. LEXIS 25257 (C.D. Cal. Jan. 12, 2022) ................... 4, 5, 6, 16

*Bartling v. Apple, Inc. (In re Apple Processor Litig.)*,
   832 F. App'x 507 (9th Cir. 2020) ................................................................ 2

*Bell v. Publix Super Mkts., Inc.*,
   982 F.3d 468 (7th Cir. 2020) ....................................................................... 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 3

*Benko v. Quality Loan Serv. Corp.*,
   789 F.3d 1111 (9th Cir. 2015) ................................................................... 24

*Berke v. Whole Foods Market California, Inc. et al.*,
   Case No.: 2:19-cv-07471 (C.D. Cal.) .......................................................... 22

*Brenner v. Procter & Gamble Co.*,
   2016 U.S. Dist. LEXIS 187303 (C.D. Cal. October 20, 2016) .................. 18

*Buso v. ACH Food Companies, Inc.*,
   445 F. Supp. 3d 1033 (S.D. Cal. 2020) .................................................. 8, 9

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) ..................................................................... 20

*Cahill v. Liberty Mutual Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ......................................................................... 3

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

*Calder v. Jones*,
465 U.S. 783 (1984) ................................................................................ 21, 22

*Coleman v. Mondelez Int'l Inc.*,
554 F. Supp. 3d 1055 (C.D. Cal. 2021) ..................................................... 5, 12

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066, 1076 (9th Cir. 2011) .............................................................. 3

*Colucci v. Whole Foods Market Services, Inc. et al.*,
Case No.: 1:19-cv-08379 (N.D. Ill.) .............................................................. 22

*Cordes v. Boulder Brands USA, Inc.*,
2018 U.S. Dist. LEXIS 217534 (C.D. Cal. 2018) ............................................ 5

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ...................................................................................... 18

*Data Disc, Inc. v. Systems Tech. Assocs., Inc.*,
557 F.2d 1280 (9th Cir. 1977) ....................................................... 19, 20, 23

*Davidson v. Kimberly-Clark Corp.*,
873 F.3d 1103 (9th Cir. 2017) ................................................................. 14, 15

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) .................................................................. 18, 20

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .......................................................................... 4

*Epstein v. Wash. Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) .......................................................................... 3

*Escobar v. Just Born, Inc.*,
2017 U.S. Dist. LEXIS 186573 (C.D. Cal. 2017) ................................... *passim*

*Forcellati v. Hyland's, Inc.*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ................................................. 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ...................................................................................... 19

*Grimm v. APN, Inc.*,
2017 U.S. Dist. LEXIS 206700 (C.D. Cal. Nov. 20, 2017) ......................... 3, 9

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) ............................................................ 2, 18, 19, 24

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

*Hendricks v. StarKist Co.,*
    30 F.Supp.3d 917 (N.D. Cal. 2014) ............................................................................ 5

*Hodsdon v. Mars, Inc.,*
    162 F. Supp. 3d 1016 (N.D. Cal. 2016) .................................................................... 15

*Jacobs v. Whole Foods Market Group, Inc.,*
    2022 U.S. Dist. LEXIS 146212 (N.D. Ill. Aug. 16, 2022) ................................ 8, 9, 10, 22

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.,*
    315 F.Appx. 603 (9th Cir. 2008) ............................................................................ 17

*Kaupelis v. Harbor Freight Tools USA, Inc.,*
    2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ........................................................ 14

*Kellman v. Whole Foods Mkt., Inc.,*
    313 F.Supp.3d 1031 (N.D. Cal. 2018) ................................................................. 3, 22

*Kennard v. Lamb Weston Holdings, Inc.,*
    2019 U.S. Dist. LEXIS 63637 (N.D. Cal. Apr. 12, 2019) ......................................... 3

*Krause-Pettai v. Unilever United States, Inc.,*
    2021 U.S. Dist. LEXIS 78635 (S.D. Cal. Apr. 23, 2021) .......................................... 5

*Kwikset v. Sup. Ct.,*
    51 Cal. 4th 310 (2011) ......................................................................................... 14

*Loomis v. Slendertone Distribution, Inc.,*
    420 F. Supp. 3d 1046 (S.D. Cal. 2019) .................................................................. 21

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................................ 2

*Maisel v. S. C. Johnson & Son, Inc.,*
    2021 U.S. Dist. LEXIS 86203 (N.D. Cal. May 5, 2021) ......................................... 18

*Maisel v. Tootsie Roll Indus., LLC,*
    2021 U.S. Dist. LEXIS 139846 (N.D. Cal. Jul. 27, 2021) ........................................ 4

*Marine Midland Bank, N.A. v. Miller,*
    664 F.2d 899 (2d Cir.1981) ................................................................................... 27

*Martinelli v. Johnson & Johnson,*
    2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ........................................................ 14

*Matic v. United States Nutrition, Inc.,*
    2019 U.S. Dist. LEXIS 131576 (C.D. Cal. Mar. 27, 2019) .............................. 5, 10, 18

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
  647 F.3d 1218 (9th Cir. 2011)........................................................................................ 2

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d at 590 (9th Cir. 2012) ............................................................................. 13, 14

*Melgar v. Zicam LLC,*
  2016 WL 1267870 (E.D. Cal. Mar. 31, 2016).............................................................. 14

*Morongo Band of Mission Indians v. Rose,*
  893 F.2d 1074 (9th Cir. 1990) ..................................................................................... 25

*Nguyen v. Barnes & Noble Inc.,*
  2015 WL 12766050 (C.D. Cal. Nov. 23, 2015) ........................................................... 13

*Padilla v. The Whitewave Foods Co., et. al.,*
  2019 U.S. Dist. LEXIS 167126 (C.D. Cal. July 26, 2019)...................................*passim*

*Picot v. Weston,*
  780 F.3d 1206 (9th Cir. 2015) ..................................................................................... 21

*Pino v. Birch Benders, LLC,*
  2022 U.S. Dist. LEXIS 180804 (N.D. Cal. Oct. 3, 2022) ............................................ 16

*Prescott v. Bayer HealthCare LLC,*
  2020 U.S. Dist. LEXIS 136651 (N.D. Cal. July 31, 2020) ............................................ 3

*Ranza v. Nike, Inc.,*
  793 F.3d 1059 (9th Cir. 2015) ..................................................................................... 19

*Reider v. Immaculate Baking Co.,*
  2018 WL 6930890 (C.D. Cal., Nov. 8, 2018) ........................................................... 7, 8

*Rutledge v. Hewlett-Packard Co.,*
  238 Cal. App. 4th 1164 (2015)....................................................................................... 9

*Samet v. P&G,*
  2013 U.S. Dist. LEXIS 86432 (N.D. Cal. 2013) ........................................................... 4

*Schoonover v. Iovate Health Scis. U.S.A. Inc.,*
  2020 U.S. Dist. LEXIS 155185 (C.D. Cal. June 18, 2020) ....................................... 5, 6

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004)....................................................................................... 21

*Shank v. Presidio Brands, Inc.,*
  2018 WL 510169 (N.D. Cal. Jan. 23, 2018)................................................................ 13

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

v

*Skinner v. Ken's Foods, Inc.*,
   53 Cal.App.5th 938 (2020) ................................................................ 7, 16

*Smith v. Jackson*,
   84 F. 3d 1213 (9th Cir. 1996) ................................................................ 25

*Stemm v. Tootsie Roll Indus.*,
   374 F. Supp. 3d 734 (N.D. Ill. 2019) ...................................................... 6

*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021) .................................................. 8

*Strow v. B&G Foods, Inc.*,
   2022 U.S. Dist. LEXIS 179463 (N.D. Ill. Sep. 30, 2022) ...................... 9

*Swearingen v. Yucatan Foods, L.P.*,
   24 F. Supp. 3d 889 (N.D. Cal. 2014) .................................................... 24

*Warren v. Whole Foods Market California, Inc.*,
   Case No.: 3:21-cv-04577 (N.D. Cal.) .................................................... 22

*Watkins Inc. v. McCormick & Co.*,
   215 F.Supp.3d 51 (D.D.C. 2016) .......................................................... 20

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................ 3, 4, 7, 8

*Willis v. Princess Cruise Lines*,
   2020 WL 5353984 (C.D. Cal. May 29, 2020) ...................................... 21

*Winkelbauer v. Orgain Management, Inc. et al.*,
   2021 Cal. Super. LEXIS 7158 (L.A.S.C., May 20, 2021) ................. *passim*

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
   433 F.3d 1199 (9th Cir. 2006) .............................................................. 21

*Zakaria v. Gerber Prods. Co.*,
   2015 U.S. Dist. LEXIS 80428 (C.D. Cal. June 18, 2015) ..................... 17

## **Rules**

CAND L.R. 3-15.............................................................................................. 22

Fed. R. Civ. P. 12 ..................................................................................... 2, 3, 13

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

**<u>Federal Regulations</u>**

58 FR 64123 ............................................................................................................. 7

58 FR 64128 ............................................................................................................. 7

21 C.F.R. 100.100 ......................................................................................... 6, 10, 13

**<u>Other Authorities</u>**

Rest.2d Torts, § 525 .................................................................................................. 17

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## I.   **INTRODUCTION**

As alleged, Defendants violate California and federal law by selling Whole Foods 365 brand macaroni and cheese products (the "Products") in half-empty opaque packaging. This "slack-fill" serves no lawful purpose and is therefore illegal under state and federal law.

Defendants attempt to turn the motion to dismiss into a summary judgment motion, asking the court to make premature factual and legal findings before discovery, and disregarding plausible allegations. This is not the rare case the Court can resolve at the pleadings stage. Plaintiffs plausibly allege that none of the statutory exceptions apply. One critical fact shows just how plausible these allegations are: Defendants' Organic Product is filled 8% less full than their Conventional Product. This forecloses any fact-intensive argument that Defendants make regarding the applicability of the slack-fill exceptions. Defendants then argue that net weight and serving disclosures immunize them from liability. FDA guidance and case law confirm this is not a valid defense. Because the Products are packed in oversized, opaque boxes containing significant nonfunctional slack-fill, they are misleading to reasonable consumers. Plaintiffs should be allowed to prove their case on the merits.

Defendants also argue that Plaintiffs lack standing, but Plaintiffs have plausibly alleged economic injury, which is the basis for standing, and courts consistently hold plaintiffs have standing to seek injunctive relief under these circumstances. Defendants also prematurely ask the Court to conduct a class certification hearing and do a detailed choice-of-law analysis; now is not the time. Defendants also attack Plaintiffs' common law claims, arguing that they have not pleaded an affirmative misrepresentation. This is not the law; in slack-fill cases, the size of a product container serves as an affirmative representation of the amount of product contained therein, and Plaintiffs have plausibly alleged that they relied on the size of Defendants' container.

Defendants' jurisdictional arguments also fail. Subject matter jurisdiction exists under the Class Action Fairness Act ("CAFA"). As to personal jurisdiction, Whole Foods Market, Inc. ("WFMI") is essentially at home in California, and the Court has specific jurisdiction over it as the distributor of the Products. The declaration of Timothy Horn, filed in an effort to defeat personal jurisdiction as to WFMI (Dkt. 40), is conclusory and inaccurate. Plaintiffs have proffered

1

competing evidence, which, at a minimum, entitles them to jurisdictional discovery. Defendants' motion to dismiss should be denied.

## II.   FACTS

Defendants sell the Whole Foods 365 brand macaroni and cheese products ("Products") in oversized, opaque boxes that contain 48-56% empty space. (First Amended Complaint ("FAC") ¶ 1.) Defendants are illegally choosing to underfill the Products to save on manufacturing and production costs. (*Id.* ¶ 4.) As alleged in detail, none of the slack-fill statutory safe harbors apply to the Products; therefore, the packaging at issue contains nonfunctional slack-fill and is *per se* misleading. (*Id.* ¶ 1, 35-51.) Defendants' Organic and Conventional Products have nearly identical physical properties, yet the Organic Products contain 8% more slack-fill than the Conventional Products; this difference alone shows that the slack-fill has no lawful, statutory compliant function. (*Id.* ¶ 57-59.) Defendants' unlawful scheme harms reasonable consumers by duping them into believing they are purchasing a box reasonably full of macaroni when, in reality, they are paying a premium for empty space. (*Id.* ¶ 1.) California and federal law explicitly proscribe this kind of deception. (*Id.* ¶¶ 35-36.)

## III.   LEGAL STANDARDS

Rule 12(b)(1) governs dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "At the pleading stage . . . we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotes and citation omitted). Plaintiffs' burden is a "modest" one; "Plaintiffs need only one viable basis for standing." *Bartling v. Apple, Inc. (In re Apple Processor Litig.)*, 832 F. App'x 507, 508 (9th Cir. 2020) (internal citations omitted).

Rule 12(b)(2) requires plaintiffs to make only a "prima facie showing of jurisdictional facts." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). This means that the plaintiffs have produced evidence, which, would be sufficient to establish the existence of personal jurisdiction. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). The burden then shifts to defendants to make a "compelling

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

case" that the exercise of personal jurisdiction "would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quotes and citation omitted).

Under Rule 12(b)(6), a complaint must simply articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a Rule 12(b)(6) motion, "allegations of material fact are taken as true and construed in the light most favorable to Plaintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

## IV.   ARGUMENT

### A.   Plaintiffs Have Plausibly Alleged Violations of the UCL, FAL, and CLRA

#### 1.   *The Merits of Plaintiffs' Factual Allegations Are not Before the Court*

Defendants argue the packaging could not deceive any reasonable consumer. (Motion to Dismiss ("MTD") at 20). This argument is premature. A motion to dismiss tests the legal sufficiency, not the merits, of the factual allegations in the complaint. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337 (9th Cir. 1996). Whether the Products' packaging is deceptive to reasonable consumers is "a question of fact not appropriate for decision" at the pleading stage. *Kennard v. Lamb Weston Holdings, Inc.*, 2019 U.S. Dist. LEXIS 63637, at *7-8 (N.D. Cal. Apr. 12, 2019) (internal citation omitted). Only in "rare" cases should a court grant a motion to dismiss based upon a review of the disputed packaging. *Grimm v. APN, Inc.*, 2017 U.S. Dist. LEXIS 206700, at *5 (C.D. Cal. Nov. 20, 2017) (emphasis added). Plaintiffs' plausible allegations suffice.

#### 2.   *The Products' Packaging is Deceptive to the Reasonable Consumer*

"Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) (quotations omitted). *See also Kellman v. Whole Foods Mkt., Inc.*, 313 F.Supp.3d 1031, 1049 (N.D. Cal. 2018) (these laws prohibit not only false advertising, but also advertising that "has a capacity, likelihood or tendency to deceive or confuse the public.") "On a motion to dismiss, the Court must accept Plaintiffs' view of the reasonable consumer's understanding[.]" *Prescott v. Bayer HealthCare LLC*, 2020 U.S. Dist. LEXIS 136651, at *21 (N.D. Cal. July 31, 2020). In slack-fill cases, "the amount of slack-fill expected by the reasonable consumer is a debatable

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

factual question that is inappropriate to resolve at the motion to dismiss stage." *Samet v. P&G*, 2013 U.S. Dist. LEXIS 86432, *32-33 (N.D. Cal. Jun. 18, 2013) (Mag. Grewal, P.).

Plaintiffs have plausibly alleged that the Products' packaging is deceptive to the reasonable consumer. Plaintiffs allege the Products contain approximately 48-56% nonfunctional slack fill (FAC ¶¶ 29, 34) and that the oversized packaging affirmatively misrepresents the quantity of pasta product contained therein (*Id.* ¶ 26.) Plaintiffs further allege that the Products' packaging misleads reasonable consumers to believe that the Products contain a quantity of macaroni consistent with the size of the box (*Id.*), and that reasonable consumers are induced to purchase the Products based on the misrepresentation (*Id.* ¶¶ 163, 171, 179.) Taken as true, these allegations suffice.

Courts only rule that no reasonable consumer could be deceived as a matter of law when "the advertisement itself made it *impossible* for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939 (emphasis added). Slack-fill jurisprudence is clear: this is not an "impossible" case.[1] *See*, *e.g.*, *Winkelbauer v. Orgain Management, Inc. et al.*, 2021 Cal. Super. LEXIS 7158 (L.A.S.C., May 20, 2021) ("[plaintiff's] unfair competition and false advertising claims do not fail as a matter of law under the reasonable consumer standard.") Indeed, courts routinely find that reasonable consumers are "likely to be deceived" by an oversized package, even where the packaging discloses the quantity of product contained therein. *Maisel v. Tootsie Roll Indus., LLC*, 2021 U.S. Dist. LEXIS 139846, at 11-12 (N.D. Cal. Jul. 27, 2021) (Mag. Kim, S.) ("Plaintiff has plausibly alleged that a reasonable consumer is likely to be deceived by the discrepancy between the size of the Products' boxes and the boxes' disclosures regarding the amount of candy they contain.") Thus, courts deny motions to dismiss in slack-fill cases where, as here, consumers "reasonably rely on the size of the packaging and believe that it accurately reflects the amount she is purchasing." *Escobar v. Just Born, Inc.*, 2017 U.S. Dist. LEXIS 186573, at *25 (C.D. Cal. 2017); *see also Barrett v. Optimum Nutrition*, 2022 U.S. Dist.

---

[1] Defendants' reliance on *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) is inapposite. *Ebner* is not a slack-fill case; it is a case involving an "unused portion" of product. *Id*. at 967. In *Ebner*, the plaintiff incorrectly alleged that inaccessible product in a tube of lip balm constituted unlawful slack-fill. *Id.* at 962. The court correctly held that this portion of the packaging did not constitute slack-fill, which is defined under the statute as the portion of the container *without* product. *Id.* at 967-68 (internal citations omitted).

4

LEXIS 25257 (C.D. Cal. Jan. 12, 2022) (denying motion to dismiss because an opaque container with 45% nonfunctional slack-fill could mislead reasonable consumers); *Padilla v. The Whitewave Foods Co.*, et. al., 2019 U.S. Dist. LEXIS 167126, *40-46 (C.D. Cal. July 26, 2019) (same); *Schoonover v. Iovate Health Scis. U.S.A. Inc.*, 2020 U.S. Dist. LEXIS 155185 (C.D. Cal. June 18, 2020) (same); *Krause-Pettai v. Unilever United States, Inc.*, 2021 U.S. Dist. LEXIS 78635 (S.D. Cal. Apr. 23, 2021) (same); *Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1062 (C.D. Cal. 2021) ("a consumer could be deceived by a package filled with [58%] air," regardless of unit disclosure on the ingredient list) (internal citation omitted)); *Matic v. United States Nutrition, Inc.*, 2019 U.S. Dist. LEXIS 131576 (C.D. Cal. Mar. 27, 2019) (denying motion to dismiss slack-filled supplement container claims); *Iglesias v. Ferrara Candy Co.* (N.D. Cal. Jul. 25, 2017) (Hon. Chhabria, V.) ("The complaint adequately alleges that the packaging is likely to deceive a reasonable consumer."); *Hendricks v. StarKist Co.*, 30 F.Supp.3d 917, 932 (N.D. Cal. 2014) (Hon. Gonzalez Rogers, Y.) (denying motion to dismiss because opaque containers with anywhere from 1.1% to 17.3% slack-fill were misleading to reasonable consumers); *Cordes v. Boulder Brands USA, Inc.*, 2018 U.S. Dist. LEXIS 217534 (C.D. Cal. 2018) (finding that a reasonable consumer could be deceived by packaging that includes 40% slack-fill where piece count was displayed on the ingredient list).

Defendants rely on "baking mix" cases, arguing that "because [the Products] require[] preparation" the packaging is not misleading. (MTD at 17-20.) The dividing line Defendants draw between products that do and do not require preparation is convenient, but not supported in law or policy. California state and federal courts have held that other slack-filled products requiring preparation can mislead reasonable consumers. In *Barrett v. The Kroger Co.*, Case No. 21STCV14122 (Los Angeles County Superior Court Oct. 8, 2021), the product stated preparation instructions: "MIX ONE SCOOP INTO 12 OUNCES OF COLD WATER OR NON-DAIRY BEVERAGE AND SHAKE WELL . . ." Declaration of Zachary Chrzan ("ZC Decl."), Exhibit ("Ex.") 1. The court still found that the plaintiff "adequately pleaded that the alleged slack-fill in the Product's container could mislead a reasonable consumer." *Id.*; *see also Padilla*, 2019 U.S. Dist. LEXIS 167126; *Matic*, 2019 U.S. Dist. LEXIS 131576; *Merry*; *Barrett*, 2022 U.S. Dist.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

5

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

LEXIS 25257; *Schoonover*, 2020 U.S. Dist. LEXIS 155185; *Winkelbauer*. In all six cases, California courts ruled that reasonable consumers may be deceived, even though the products required preparation and the labeling carried accurate servings disclosures. This is not surprising, as applicable slack fill regulations provide no exception for "uncooked" foods or foods that require preparation. The statute is clear: any container with non-functional slack-fill is misbranded and, therefore, *per se* misleading. 21 C.F.R. 100.100(a).

Ultimately, the understanding that the pasta expands slightly when cooked and the reasonable expectation that the box contains a greater amount of pasta are not mutually exclusive. In other words, a slack-filled box necessarily yields less cooked product than a reasonably filled box—so a consumer may nonetheless be deceived because they expected to receive a box reasonably filled with uncooked product and, therefore, a greater amount of cooked product.

### 3.  *Net Weight and Rear-Label Serving Disclosures Do Not Dispel Deception*

Defendants argue that net weight and rear-label serving disclosures dispel consumer deception. (MTD 17-19.) Not so. First, this argument asks the Court to make an improper fact determination and ignore Plaintiffs' well-pleaded allegations. *See* FAC ¶ 32 ("Disclosures of net weight and serving sizes in ounces, grams, or cups do not allow the reasonable consumer to make . . . any meaningful conclusions about the amount of macaroni and cheese contained in the Products' boxes"); (*Id.* at ¶¶ 27, 31.)

Second, courts routinely hold that identical net weight and rear-label serving disclosures do not dispel deception for products that, like macaroni and cheese, are not traditional "countable goods." *See*, *e.g.*, *Winkelbauer*, 2021 Cal. Super. LEXIS 7158 at *8 ("The Court cannot conclude, as a matter of law, a reasonable consumer is sufficiently versed in weights and measures to read the net weight listed on [defendant's] label and . . . translate that net weight into an expected quantity of powder."); *Stemm v. Tootsie Roll Indus.*, 374 F. Supp. 3d 734, 741 (N.D. Ill. 2019) ("the Court cannot conclude that [net weight and piece count] disclosures, in and of themselves, render the Product not misleading as a matter of law.") (internal citations omitted); *Barrett*, 2022 U.S. Dist. LEXIS 25257, *6-7:

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

> *Padilla* [2019 U.S. Dist. LEXIS 167126] is directly on point. Like this case, it involved a protein powder product that disclosed the product's net weight and number of servings. The court distinguished cases with more "countable" goods and concluded that, "[a]lthough the packaging lists the weight and approximate number of servings in each container, the containers' size may provide consumers with a more salient means by which to assess the quantity of product they are purchasing and its value."

*See also Escobar*, 2017 U.S. Dist. LEXIS 186573, at *25 ("[T]he fact that the Products' packaging accurately indicated that a consumer would receive 141 grams or 5 ounces of candy does not, on its own, indicate to a reasonable consumer that the Products' box may not be full of candy.")[2]

Third, the inconspicuous serving disclosures appear in small print, tucked away on the Products' back labels. California law is clear: consumers do not have a duty to inspect the back label of a product to dispel misperceptions created by the products' front packaging:

> [R]easonable consumers should [not] be expected to look beyond misleading representations on the front of [a bottle] to discover the truth from the ingredient list in small print on the [back] . . . In claiming that Respondents should have carefully examined the back labels'. . . Ken's requires too much. Reasonable consumers are not required to be versed in the art of inspecting and judging a product ... [or] the process of its preparation or manufacture. Yet Ken's would require just that, forcing them to glean from an ingredient list in small print on the back of a bottle the limitations to the representations made in large print on the front. The law imposes no such requirement. (internal citations and quotations omitted).

*Skinner v. Ken's Foods, Inc.*, 53 Cal.App.5th 938, 949 (2020); *See also Williams*, 552 F.3d at 939-940 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.")

### 4.    Defendants' Cases Are Distinguishable and Incorrectly Decided

Defendants rely on four slack-fill cases where courts held that yield charts dispelled deception; however, the form and presentation of those yield charts differed substantially from the serving disclosure on the Products. *Reider v. Immaculate Baking Co.*, 2018 WL 6930890 (C.D. Cal., Nov. 8, 2018) is inapposite. The packaging at issue in *Reider* included a "*conspicuous yield chart* listing *the number of certain size cakes* that can be made from one box of mix.*" Id.* at *5 (emphasis added). *Compare* ZC Decl., Ex. 2 *with* Defendants' RJN Exs. 1-4. A cursory review

---

[2] The FDA agrees that net weight disclosures do not dispel deception: "FDA disagrees with the comments that stated that net weight statements protect against misleading fill. FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading." 58 FR 64123, 64128.

reveals that the Products' serving disclosures are nothing like the yield chart in *Reider*. The *Reider* yield chart, presented in graph form, provides: four different baking options, the correct glass pan size, numerical diameters of baked cakes, and the exact number of cupcakes (a "countable" good) the box will yield.[3] Here, the serving disclosure does not contain any countable number of goods as was present in *Reider*. It is also neither conspicuous nor presented in chart form—it is buried, in small print, on the nutrition facts panel on the back label. These rear-label corrective disclosures therefore fail to provide a "shield for liability," much less a basis to conclude that as a matter of law it would be impossible for a reasonable consumer to be misled by the oversized packaging itself. *Williams*, 552 F.3d at 939-940.

 *Buso v. ACH Food Companies, Inc*., 445 F. Supp. 3d 1033 (S.D. Cal. 2020) and *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1126 (S.D. Cal. 2021) are similarly distinguishable. In *Buso*, the yield chart indicated that the box contains enough mix to make "one 8-in square 'loaf' of cornbread or 12 standard cornbread muffins." *Buso*, 445 F. Supp. 3d at 1038. *Compare* ZC Decl., Ex. 3 *with* Defendants' RJN, Exs. 1-4. In *Kodiak*, the yield disclosures appeared conspicuously under the baking instructions chart and are stated in traditionally countable, easily comprehensible terms—i.e., "[m]akes 12 brownies." *Compare* ZC Decl., Ex. 4 *with* Defendants' RJN, Exs. 1-4. The yield disclosures in both *Buso* and *Kodiak* are communicated in simple numerical terms easily conceptualized by the reasonable consumer. Defendants' serving disclosures are stated in ounces, tablespoons, and cups, terms that do not dispel deception. *See Winkelbauer*, 2021 Cal. Super. LEXIS 7158 at *8 ("The Court cannot conclude, as a matter of law, a reasonable consumer is sufficiently versed in weights and measures to read the net weight listed on Orgain's label and, with no other visual reference, translate that net weight into an expected quantity of [product].") Defendants fail to dispel the false impression made by the oversized boxes; arguing otherwise asks the Court to make improper factual findings.

//

//

---

[3] The *Reider* court also specifically considered the yield chart in light of the unique context of the baking industry. Consumers making baked goods "expect the packaging to indicate the quantity of prepared cake that box will yield," and therefore seek out a yield chart. *Id.*, at *6.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Jacobs v. Whole Foods Market Group, Inc.*, 2022 U.S. Dist. LEXIS 146212 (N.D. Ill. Aug. 16, 2022) is likewise inapposite.[4] First, *Jacobs* is one, out-of-circuit, non-binding case, and it is inconsistent with California law, which is more consumer friendly than the Illinois law under which it was decided. *See Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1188 (2015) ("California's consumer protection laws are among the strongest in the country.") (internal citations omitted). There are substantial differences in how the Seventh and Ninth Circuits analyze slack-fill cases; a prime example: *Jacobs* never once mentions that only in "rare" cases should a court grant a motion to dismiss based upon a review of the disputed packaging. *Grimm*, 2017 U.S. Dist. LEXIS 206700, at *5. Moreover, in *Jacobs*, the plaintiff alleged violations of Illinois law and the laws of 15 other states (all of which the court noted are "similar" to Illinois law). *Id.* at *2. Notably, California consumer protection laws were not implicated. The only Ninth Circuit case mentioned by the *Jacobs* Court is *Buso*, which is inapposite for all the reasons previously stated. Where, as here, there are in-circuit decisions perfectly on point, the Court should not rely on out-of-circuit authority applying Illinois law.[5]

*Jacobs* also relied on this statement: "Illinois law is clear that where other information is available to dispel that tendency [to mislead], there is *no possibility* for deception." *Jacobs*, 2022 U.S. Dist. LEXIS 146212, at *6 (internal citations omitted) (emphasis added). That is <u>not</u> the law in California. Instead, courts in California consistently hold that the size of packaging may be misleading *despite* the presence clarifying disclosures in text. *See*, *e.g.*, *Winkelbauer*, 2021 Cal. Super. LEXIS 7158 at *8 ("The Court cannot conclude, as a matter of law, a reasonable consumer is sufficiently versed in weights and measures to read the net weight listed on [defendant's] label

---

[4] In *Jacobs*, the plaintiff did not challenge "the accuracy or the conspicuousness" of the net weight, serving, or yield disclosures on the Packaging. 2022 U.S. Dist. LEXIS 146212, at *3. In fact, the plaintiff affirmatively alleged that he read and "relied on the words and images on the Product [and] on the labeling when purchasing the product" *Id.* Here, Plaintiffs allege that they "relied upon the opaque packaging, including the size of the box." FAC ¶¶ 14-16.

[5] *Jacobs* may also have been wrongly decided under Illinois' less consumer-friendly laws. In Illinois, consumers do not have a duty to investigate rear-label disclosures to cure front-label deception. *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020) (following the reasoning from the Ninth circuit: "the reasonable consumer standard does not presume . . . that reasonable consumers will test prominent front-label claims by examining the fine print on the back label"); *Strow v. B&G Foods, Inc.*, 2022 U.S. Dist. LEXIS 179463, at *22 (N.D. Ill. Sep. 30, 2022) ("the Seventh Circuit shies away from allowing back-label disclaimers to exonerate front-label deceptions as a matter of law.")

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and . . . translate that net weight into an expected quantity of powder."); *Escobar*, 2017 U.S. Dist. LEXIS 186573, at *25 ("[T]he fact that the Products' packaging accurately indicated that a consumer would receive 141 grams or 5 ounces of candy does not, on its own, indicate to a reasonable consumer that the Products' box may not be full of candy.")

Second, the *Jacobs* court engaged in fact-finding not appropriate on a motion to dismiss, stating that a reasonable consumer "expects the size of the box to bear only a loose relationship to the amount of cooked product its contents will yield." *Id.* at *5. According to the court, plaintiff failed "to explain [] why a reasonable consumer would care about the ratio of uncooked product to empty space, when what he really wants to know is how many boxes he needs to buy to end up with a given amount of cooked rice pilaf on his serving platter or plate." *Id.* at *7, n. 1. This statement reflects a misunderstanding of slack-fill law and policy. Nonfunctional slack-fill is prohibited, and containers with it are *per se* misleading, precisely because of its tendency to mislead consumers. 21 C.F.R. 100.100(a). By stating that the plaintiff would have to explain why a reasonable consumer would care about the amount of uncooked food in the box, the *Jacobs* court implies there is an exception for uncooked foods— but there is no such exception. It also defies logic. There, as here, the amount of dry product in the packaging bears a *direct* relationship to the amount of cooked product. Consumers therefore naturally and reasonably form expectations about the amount of product they are receiving based on the size of a product's package, even when the item they are buying requires preparation. (FAC ¶ 23, 26, 30, 55, 74.)

**5.** ***The Products' Packaging Contains Nonfunctional Slack-Fill***

Ignoring Plaintiffs' 17 detailed allegations explaining why each of the slack-fill exceptions do not apply (FAC ¶ 35-51), Defendants argue that Plaintiffs' UCL unlawful claim should be dismissed because their slack-fill allegations are "wholly conclusory." (MTD at 21-22.) Not so. First, determining whether slack-fill statutory safe harbors apply is inherently fact driven and therefore inappropriate on a motion to dismiss. *See Escobar,* 2017 U.S. Dist. LEXIS 186573, at *29 ("the Court is mindful of the admonition that whether product labeling or packaging may mislead a reasonable consumer is a factual inquiry rarely appropriate for decision on a motion to

10

dismiss."); *Matic*, 2019 U.S. Dist. LEXIS 131576 at *17-20 (holding plaintiffs are not required to prove the slack-fill is non-functional; they need only plead the exceptions do not apply).[6]

First, Defendants label as "conclusory" this allegation: "The machines used to package the Products would not be affected if there was more macaroni and cheese added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple." (FAC ¶ 39.) That the machines would require, at most, a simple recalibration, is itself an assertion of fact and is therefore not conclusory. Plaintiffs' allegations are also well supported by another fact: the Organic Product is filled approximately 8% less than the Conventional Product. (FAC ¶ 40.) Ultimately, "[t]he difference in fill between the Conventional Products and the Organic Products shows that Defendants are able to recalibrate and adjust the machines to ensure the Products are more full." (FAC ¶ 41.) The fill levels of the Products are not a result of machine requirements, but rather, a deliberate choice by Defendants to underfill the Products. (FAC ¶ 4.)

Defendants also take issue with Plaintiffs allegations regarding settling. However, the density, shape, and composition of the Products are facts that support Plaintiffs' allegation that any slack-fill would have been present at the time the packages were filled. (FAC ¶ 43-44.) Defendants' assertion that macaroni "can settle" (MTD at 22), does not render allegations to the contrary implausible and raises a factual question inappropriate for resolution at this stage. Even assuming, *arguendo*, Defendants are correct that "macaroni can settle as much as 23 percent" (*Id.*), as Plaintiffs allege, this does not justify selling the Products half empty. (FAC ¶ 45.) *See Padilla*, 2019 U.S. Dist. LEXIS 167126, *44 ("If one fraction of an inch of slack fill in a container arises from product settling and another six inches of slack fill is not attributable to any legitimate purpose, the entire product is not shielded from allegations of nonfunctional slack fill.")

---

[6] Some courts in the Ninth Circuit hold that plaintiffs are not required to affirmatively plead that the slack-fill exceptions do not apply. *See Padilla*, 2019 U.S. Dist. LEXIS 167126, at *41 (explaining that some courts "have determined that the safe harbor doctrine is an affirmative defense 'rather than . . . an affirmative pleading requirement,' and, accordingly, need not be pleaded in the complaint.); *see also McMillan v. Lowe's Home Ctrs.*, 2016 U.S. Dist. LEXIS 59468, at *17-18 (E.D. Cal. May 3, 2016); Spacone v. Sanford, LP, 2017 WL 6888497, at *7 (C.D. Cal. May 11, 2017).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendants also argue that the slack-fill is necessary to protect the macaroni during transport and to prevent spilling when opened. (MTD at 22.) Plaintiffs plausibly allege otherwise: "The slack-fill contained in the Products' packaging does not protect the contents of the package. In fact, the greater the amount of slack-fill, the more room the contents have to bounce around during shipping and handling, making it more likely that the contents will break or sustain damage." (FAC at ¶ 37.) Defendants' argument to the contrary does not establish that Plaintiffs' allegations are not well-pleaded; ultimately, whether the slack-fill protects the ingredients, and the amount of slack-fill required to prevent the contents from spilling, are fact-intensive, expert-driven questions unfit for determination at this stage.

Defendants finally argue that the "packaging needs to be large enough to accommodate the cheese mix packet and still seal closed." (MTD at 22.) But Defendants fail to explain why this cheese mix packet, which is a fraction of the size of the box, requires the Products to be half-empty. Plaintiffs allege that Defendants can either increase the amount of macaroni in the Products or decrease the size of the packages—a plausible allegation notwithstanding any need to accommodate the cheese mix packet. (FAC ¶ 49.) Indeed, the varying fill levels between the Organic and Conventional Products shows that Defendants could alter the fill levels if they wanted. (FAC ¶ 50.) At minimum, the 8% difference in fill level proves that the Organic Product contains at least 8% nonfunctional slack-fill. *See generally Padilla*, 2019 U.S. Dist. LEXIS 167126, *44 (rejecting the notion that some functional use of empty space precludes the rest of the space from being nonfunctional).

Further, it is improper for Defendants to reference facts outside the FAC to prove the slack-fill is functional. *See Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d. 1055, 1061 (C.D. Cal) ("Defendant's arguments as to why the slack-fill in its Product falls within the safe harbor provisions[] are fact-based and more appropriate at a later stage of the litigation." *See*, *e.g.*, *Ree v. Zappos.com, Inc. (In re Zappos.com, Inc.)*, 888 F.3d 1020, 1028 (9th Cir. 2018) ("[Defendant] argues that this allegation is implausible, but it does so by relying on facts outside the Complaint[] . . . which makes its argument one that may be appropriate for summary judgment but not . . . at the motion to dismiss stage.")) For this Court to find that Plaintiffs' allegations are implausible, it

12

would have to infer that the cheese packet is so tall that Defendants cannot decrease the box size, so wide that Defendants could not increase the fill, or that the packets contained in the conventional and organic products are different sizes. This would be improper. *Mueller v. San Diego Entm't Partners, Ltd. Liab. Co.*, 260 F. Supp. 3d 1283, 1292-93 (S.D. Cal. 2017) ("On a motion to dismiss, the Court must draw all reasonable inferences in favor of Plaintiff.") Plaintiffs' allegation that the amount of macaroni in the Products could be increased (or that the size of the container could be decreased) is a plausible fact, and the Court must accept Plaintiffs' well-pleaded allegations as true. *See Exxonmobil Oil Corp. v. Amex Constr. Co.*, 2008 U.S. Dist. LEXIS 41495, at *4 (N.D. Ill. May 23, 2008) ("A plaintiff need not allege all facts involved in the claim . . . [they must merely state] facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief.") As Plaintiffs allege, Defendants selectively add more macaroni to the Conventional Product as compared to the Organic Product (FAC ¶ 3); thus, a factual finding to the contrary — that Defendants are *unable* to increase the fill level — is not warranted. How much the fill-level could be increased is a fact question not suitable for resolution on a pleadings challenge, and, regardless, as Plaintiffs allege, any amount of nonfunctional slack fill is *per se* misleading.[7] (FAC ¶ 36.); *see also* 21 C.F.R. § 100.100.

### B.  Defendants Prematurely Seek to Strike Plaintiffs' Nationwide Claims

Defendants argue Plaintiffs do not have standing to assert nationwide claims and "fail to assert separate causes of action for each state's common law claims." (MTD at 11.) This argument prematurely challenges the application of California law to Plaintiffs' nationwide claims, without any discovery, prior to class certification, and Defendants fail to meet the burden of demonstrating that California's laws materially conflict with the laws of any other states.

"A detailed choice-of-law analysis is a fact-heavy analysis and is generally inappropriate on a motion to dismiss where the parties have not yet developed a factual record." *Banh v. Am. Honda Motor Co., Inc.*, 2019 WL 8683361, at *4 (C.D. Cal. Dec. 17, 2019) (internal quotes and

---

[7] If the Court is inclined to consider the evidence, it should allow Plaintiffs to take discovery on this issue and treat this motion as one for summary judgment. Fed. R. Civ. Proc. 12(d) ("If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.")

13

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

citations omitted)). Dismissal at this stage would be improper, as "***most courts in this circuit*** hold that a claim should not be dismissed on a conflict of law analysis at the pleading stage, ***especially when dealing with a potential nationwide class action.***" *Nguyen v. Barnes & Noble Inc.*, 2015 WL 12766050, at \*4 (C.D. Cal. Nov. 23, 2015)) (quotations and citations omitted; emphasis added).[8] The Court should follow the majority view in the Ninth Circuit and deny Defendants' motion on this point.

Defendants fail to demonstrate that there are material differences between the laws of various states that would lead to different outcomes. As stated in *Mazza v. Am. Honda Motor Co.*, "[t]he fact that two or more states are involved does not itself indicate that there is a conflict of law problem. A problem only arises if differences in state law are ***material***, that is, if they make a difference in ***this*** litigation." 666 F.3d at 590 (9th Cir. 2012) (emphasis added). Further, the need to conduct discovery on how material differences in laws lead to different outcomes highlights (1) the necessity of discovery for a choice-of-law analysis, and (2) why Defendants' attempt to strike Plaintiffs' putative nationwide class is premature. *Padilla*, 2019 WL 4640399, at \*17 ("The decisions deferring a ruling on this issue are more persuasive. *Mazza* is best addressed in the context of a motion to certify a class of more than California consumers. Here, the development of a factual record during discovery may inform the choice of law analysis.")

Regardless, courts routinely certify nationwide and multi-state classes in California. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, \*13 (C.D. Cal Apr. 9, 2014) (certifying nationwide class); *Melgar v. Zicam LLC*, 2016 WL 1267870, at \*2 (E.D. Cal. Mar. 31, 2016) (certifying ten state class); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at \*10 (E.D. Cal. Mar. 29, 2019) (certifying multi-state class); *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at \*15 (C.D. Cal. Sept. 23, 2020) (certifying multi-state class). Plaintiffs will establish that a nationwide class is appropriate at class certification.

//

//

---

[8] *See, e.g.*, *Shank v. Presidio Brands, Inc.*, 2018 WL 510169, at \*11 (N.D. Cal. Jan. 23, 2018) (same); *Werdebaugh*, 2013 WL 5487236, at \*16 (same).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**C.**   **Plaintiffs Have Standing to Sue Defendant WFMI**

     **1.**   *Plaintiffs Adequately Pleaded Article III and Statutory Standing*

Defendants incorrectly argue that Plaintiffs lack standing for failure to allege an economic injury traceable to Defendants' conduct. (MTD at 12, 14-15.) Not so.[9] A plaintiff sufficiently pleads economic injury "by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation." *Kwikset Corp.*, 51 Cal. 4th at 330. Plaintiffs plausibly allege that they paid an unwarranted premium for the Products based on Defendants' oversized packaging and would not have purchased the Products had they known that they contained nonfunctional slack-fill. (FAC ¶¶ 14-16, 74, 108, 116, 124, 134, 148, 174.) Because Plaintiffs plausibly allege economic injury, they have standing. *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1111 (9th Cir. 2017) ("Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action."); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1021-1022 (N.D. Cal. 2016), aff'd, 891 F.3d 857 (9th Cir. 2018) (finding allegations that plaintiff lost money in reliance on deceptive advertising adequately plead statutory standing under California's consumer protection statutes).

Defendants argue that Plaintiffs have not connected their injuries to any act or omission committed by WFMI, and do not allege any facts to support the assertion that WFMI is the distributor of the Products. (MTD at 12). Defendants are wrong. Plaintiffs allege that the economic injury discussed *infra* may be fairly traced back to WFMI as the nationwide distributor of the Products and the owner-operator of WFM CA and Mrs. Gooch's, the two regional entities that operate California stores. (FAC ¶ 20.) The Products' labels identify WFMI as the distributor of the Products (*Id*.), and Defendants identified WFMI as the owner of WFM CA and Mrs. Gooch's (Dkt. 27, 28.) On that basis, Plaintiffs allege that WFMI purposefully, intentionally, and knowingly distributed the deceptively packaged Products within California, causing economic injury to California consumers by inducing them to purchase, and pay an unwarranted premium for, the Products. (FAC ¶ 4, 108, 116, 124.) This is sufficient.

---

[9] Plaintiffs are not required to allege that Defendants advertised the Products as superior to other products or that Plaintiffs would have purchased a less expensive alternative but for the deceptive packaging. (MTD at 15.)

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

###### 2. *Plaintiffs Have Standing to Seek Injunctive Relief*

Defendants argue that Plaintiffs lack standing to seek injunctive relief. (MTD at 24.) Not so. In *Davidson*, 873 F.3d 1103, the Ninth Circuit rejected the argument that a consumer's knowledge of a product's previously false advertisement precludes the likelihood that she would suffer future harm. It reasoned that a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id*. at 1115. Two types of future harm are sufficient to confer standing: "absent an injunction, the plaintiff-consumer will (1) no longer be able to confidently rely on the defendant's representations and, (2) refrain from purchasing products in the future even if they in fact conform to her expectations." *Escobar*, 2017 U.S. Dist. LEXIS 186573, at *16.

Here, Plaintiffs allege that they would like to purchase the products again, but "are currently, and in the future, deprived of the ability to rely on the Products' packaging." (FAC ¶ 17.) This is adequate in slack-fill cases. *See*, *e.g.*, *Barrett*, 2022 U.S. Dist. LEXIS 25257, at *14 (denying motion where plaintiff alleged she may purchase the Product in the future if the packaging is not misleading); *Escobar*, 2017 U.S. Dist. LEXIS 186573, at *17 (denying motion because "[a]bsent a change to the allegedly deceptive packaging, Plaintiff will not have faith in Defendant's Product packaging, and thus avoid purchasing the Products.") *See also Pino v. Birch Benders, LLC*, 2022 U.S. Dist. LEXIS 180804, at *7 (N.D. Cal. Oct. 3, 2022) (denying motion to dismiss prayer for injunctive relief because the plaintiffs sufficiently alleged that they would like to purchase the product again in the future but were unable to rely on defendant's labels).

Defendants then argue that Plaintiffs can now cross-check their prior purchases against the net weight and serving disclosures on the label before making any future purchases to avoid deception. (MTD at 24-25.) That is not the law. In *Padilla*, 2019 U.S. Dist. LEXIS 167126, at *22, the court found that "unlike contents that can [be] counted, e.g., the number of pretzels in a bag, Plaintiffs would not be able to access the full information they seek by doing computations from the product labels." *Id*. (denying motion to dismiss prayer for injunctive relief). As discussed

16

*supra*, consumers are not required to inspect the back label of a product to dispel misperceptions created by the products' front packaging. *Skinner*, 53 Cal. App. 5th at 949. That Plaintiffs have previously been deceived by the oversized packaging does not justify imposing additional burdens on consumers who wish to purchase the Products in the future. *See Escobar*, 2017 U.S. Dist. LEXIS 186573, at *17 ("prospective relief in the advertising context is not bound by the rules of 'fool me once, shame on you; fool me twice shame on me.'") Defendants' argument also ignores the reality of the purchasing experience: to cross-check disclosures against their previous purchases, Plaintiffs would have to recall, off-hand, the precise size of the offending packaging and the associated net weight and serving disclosures. The law imposes no such obligation.

### D.      Plaintiffs' Common Law Claims Survive

####       1.      *Plaintiffs' Fraud and Intentional or Negligent Misrepresentation Claims*

Defendants incorrectly argue that Plaintiffs' negligent misrepresentation claim is barred by the economic loss rule. (MTD at 23.) "Notwithstanding, the economic loss rule, courts in California have allowed [negligent] misrepresentation claims to proceed." *Augustine v. Talking Rain Bev. Co.*, 386 F. Supp. 3d 1317, 1331 (S.D. Cal. 2019); see also *Zakaria v. Gerber Prods. Co.*, 2015 U.S. Dist. LEXIS 80428, *31 (C.D. Cal. June 18, 2015) ("California law classifies negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable."); *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F.Appx. 603, 607 (9th Cir. 2008) (same).

Defendants then argue that Plaintiffs fail to state a cause of action for fraud, intentional misrepresentation, and negligent misrepresentation because they cannot point to an actionable misrepresentation. (MTD at 23.) But Plaintiffs allege "Defendants have willfully, falsely, and knowingly filled and packaged the Products in a manner indicating that the Products are sufficiently filled with an amount of macaroni and cheese product commensurate with the size of the container." (FAC ¶ 162.) Defendants argue that this allegation is insufficient to state a claim because "'filled' and 'packaged' are not statements." (MTD at 23.) This unsupported argument is an incorrect statement of law. *See Winkelbauer*, 2021 Cal. Super. LEXIS 7158, *16 ("'Misrepresentation' means 'not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth.'" (citing Rest.2d Torts, § 525, com. b.))

17

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Slack-fill jurisprudence is clear: the size of a container serves as an affirmative misrepresentation of the amount of product contained therein. *Escobar*, 2017 U.S. Dist. LEXIS 186573 is on point. Like Defendants, Just Born argued that its product's packaging would not mislead reasonable consumers because it "prominently disclose[d] the amount of Product that the consumer [would] receive. *Id*. at 19. The court disagreed, holding that the size of the packaging served as an affirmative representation of the amount of product contained therein. *Id*. at 27 ("Thus, consumers may reasonably rely on the size of the packaging and believe that it accurately reflects the amount she is purchasing."); *See also Winkelbauer*, 2021 Cal. Super. LEXIS 7158, *16 ("the alleged misrepresentation is Orgain's conduct in packaging its protein powders . . . [Plaintiff] sufficiently pleads this misrepresentation.")

### 2.    *Plaintiffs' Claim for Unjust Enrichment*

Defendants argue there is no stand-alone unjust enrichment claim in California. (MTD at 24.) Defendants are wrong. In *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015), the plaintiffs alleged that defendant "'enticed' plaintiffs to purchase their products through 'false and misleading' labeling, and that [the defendant] was 'unjustly enriched' as a result." *Id*. at 762. The Ninth Circuit held that a plaintiff may plead unjust enrichment as a separate cause of action as the basis of a quasi-contract claim for restitution. *Id*.; *see also Barnes v. Nat. Organics, Inc.*, 2022 U.S. Dist. LEXIS 169864, *20-21 (C.D. Cal. Sep. 13, 2022).

Plaintiffs' allegations mirror those in *Astiana*: Defendants mislead consumers by falsely and deceptively packaging the Products with non-functional slack-fill. (FAC ⁋ 26.) Defendants are unjustly enriched because Plaintiffs and the putative class paid a premium for non-functional, empty space. (*Id*. at ¶ 153-57.) It would be inequitable for Defendants to retain the benefits. (*Id*.) These allegations suffice. *See Brenner v. Procter & Gamble Co.*, 2016 U.S. Dist. LEXIS 187303, at *20 ("Because . . . Plaintiff plausibly alleges that a consumer could have been enticed to purchase Defendant's product based on the allegedly misleading label . . . Plaintiff states a quasi-contract claim."); *Maisel v. S. C. Johnson & Son, Inc.*, 2021 U.S. Dist. LEXIS 86203, at *40 (N.D. Cal. May 5, 2021) (holding that since the plaintiff's unjust enrichment claim was based on the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

18

same alleged misrepresentations about the defendant's products as her other claims, she stated a claim for unjust enrichment).

### E.     The Court Has Personal Jurisdiction Over Defendant WFMI

#### 1.     *The Court Has General Jurisdiction Over Defendant WFMI*

Plaintiffs need only demonstrate facts that, if true, would support jurisdiction over the defendant. *Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1129. Plaintiffs' facts must be taken as true and "conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (internal quotations omitted).

Defendants argue that the Court cannot exercise general personal jurisdiction over Whole Foods Market, Inc. "WFMI."[10] (MTD at 8.) A court may exercise general personal jurisdiction over a foreign corporation where the corporation's affiliations with the forum state are so 'continuous and systematic' "as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). WFMI is at home in California. WFMI fully owns and operates the regional California Whole Foods entities, Mrs. Gooch's and WFM CA, through which it advertises and sells the Products to Californians. (FAC ¶ 20.) Out of 513 Whole Foods stores nationwide, 96 (nearly 20%) are located in California. (ZC. Decl., Ex. 5.) The Products' labels indicate that WFMI is the nationwide distributor of the Products. (FAC ¶ 20.) Thus, WFMI conducts business in California and receives substantial benefits and income from and through California. (*Id.*) Accordingly, this Court has general jurisdiction over Defendant WFMI. To the extent Defendants challenge the factual allegations pleaded in the FAC, the jurisdictional inquiry presents a question of fact that cannot be resolved without jurisdictional discovery. *See Harris Rutsky & Co.*, 328 F.3d at 1129.

Alternatively, general jurisdiction over WFMI may be established under the alter ego theory; this theory "may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *See Ranza*

---

[10] Plaintiffs concede that the Court may not exercise personal jurisdiction over WFM Group.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). To impute the contacts of a foreign parent to a domestic subsidiary, a plaintiff must "make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* Until there has been an evidentiary hearing, any factual conflicts in the parties' admissible evidence must be resolved in Plaintiffs' favor. *Id. Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials.")

In *Harris Rutsky & Co.*, the court considered whether it had personal jurisdiction over a foreign holding company based on California contacts of a wholly owned subsidiary. 328 F.3d at 1134. The court determined that because the district court had denied the plaintiff's motion for jurisdictional discovery, "[t]he record is simply not sufficiently developed . . . to determine whether the alter ego or agency tests are met." *Id.* at 1135. Concluding that the lower court abused its discretion, the court remanded so that the plaintiff could further develop the record with jurisdictional facts. *Id.* Here, Defendants admit that WFM CA and Mrs. Gooch's are both wholly owned subsidiaries of WFMI. (Dkt. 27, 28.) Plaintiffs believe that, given the opportunity to conduct jurisdictional discovery, they will be poised to allege additional facts demonstrating that WFMI exercises such control over its subsidiaries, WFM CA and Mrs. Gooch's, so as to render those entities mere instrumentalities of WFMI. (ZC Decl. at ¶ 7-10.) *See Unocal*, 248 F.3d at 926 ("where a parent corporation uses its subsidiary as a marketing conduit and attempts to shield itself from liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied.") (internal quotations omitted); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) ("Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.") (internal quotations omitted).

*Watkins v. Plum, PBC*, 2022 U.S. Dist. LEXIS 172240 (E.D. La. Sep. 23, 2022) is directly on point. In *Watkins*, WFMI moved to dismiss for lack of personal jurisdiction and, like here, the

court considered whether a non-resident holding company can be subjected to personal jurisdiction in Louisiana. *Id.* at \*3-4. WFMI made essentially the same argument it makes here, that it was not subject to personal jurisdiction "because it is not a resident of Louisiana, it does not contract business in Louisiana, and it is little more than a holding company for the operating company that does sell products to Louisiana citizens." *Id.* In support of WFMI's motion, Timothy Horn submitted a declaration that is, in all relevant respects, substantively identical to the one he submitted in this case. ZC Decl., Ex. 7. The *Watkins* court found that, because the "alter-ego" test is particularly fact intensive and the information relevant to that analysis is not generally available to the public, jurisdictional discovery was warranted. *Watkins*, 2022 U.S. Dist. LEXIS 172240, at \*5-6.

### 2.    *This Court has Specific Jurisdiction Over Defendant WFMI*

Courts may exercise specific personal jurisdiction depending on "the nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc, Inc.*, 557 F.2d at 1287.

> "The Ninth Circuit employs a three-part test to evaluate whether a defendant has sufficient contacts with the forum state: (1) The defendant must purposefully direct his activities at the forum, or purposefully avail itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Willis v. Princess Cruise Lines*, 2020 WL 5353984, at \*3 (C.D. Cal. May 29, 2020) (citing *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015)). "If proven, the burden shifts to the defendant to make a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotations omitted). "Despite its label, [the "purposeful availment"] prong includes both purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

When analyzing "purposeful direction," courts apply the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984). The "effects test" examines whether defendants "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

21

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

defendant knows is likely to be suffered in the forum state." *Id.* "To establish the defendant 'purposefully directed' its conduct toward the forum, the plaintiff usually produces 'evidence of the defendant's actions outside the forum state that are directed at the forum, **such as the distribution in the forum state of goods originating elsewhere**.'" *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1067 (S.D. Cal. 2019) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004) (emphasis added)).

WFMI is the distributor of the Products, as is indicated on the Products' label. (FAC ¶ 20.) WMFI's conduct in distributing the Products to Whole Foods stores in California constitutes an intentional act expressly aimed at the forum state. WFMI's unlawful act of distributing the Products causes harm to California consumers by inducing them to purchase and pay an unwarranted premium for the Products. (FAC ¶ 4, 108, 116, 124.) WFMI knows that California consumers are likely to suffer this harm because it distributes the Products throughout California and, as part of Whole Foods' vertically integrated corporate structure (which includes the manufacturer of the Products), WFMI is, or should be aware that the products contain nonfunctional slack-fill. Thus, the harm suffered by California consumers was foreseeable. These same facts prove the second prong of the specific jurisdiction test, that the claim is one "which arises out of or relates to the defendant's forum-related activities" *Calder*, 465 U.S. at 783.

## F.  Alternatively, The Court Should Grant Plaintiffs Leave to Conduct Jurisdictional Discovery

Plaintiffs are now aware of at least five other federal cases in which Defendants have, at least partially, successfully moved to dismiss based on lack of personal jurisdiction of various Whole Foods entities.[11] Timothy Horn, the litigation paralegal who submitted a declaration in this case (Dkt 40.), submitted declarations, all of which are very similar to the declaration he submitted in this case, in four out of these five cases. These five cases show just how complex and painstaking it is for plaintiffs to untangle the Whole Foods entity web, without any assistance from

---

[11] *See Kellman et al. v. Whole Foods Market, Inc.* (N.D. Cal.), *Jacobs v. Whole Foods Market Group, Inc.* (N.D. Ill.), *Colucci v. Whole Foods Market Services, Inc. et al.* (N.D. Ill.), *Berke v. Whole Foods Market California, Inc. et al.* (C.D. Cal.), *Warren v. Whole Foods Market California, Inc.* (N.D. Cal.)

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Whole Foods. But if Timothy Horn can submit declarations stating why courts cannot exercise personal jurisdiction over various entities, he can also provide the names of liable entities. His affidavits always suggest the same thing: that WFMI is not responsible for any of the actions that could lead to liability, that it is another, unnamed, entity that is responsible. When Plaintiffs requested that Whole Foods provide this basic information in the meet and confer process, Whole Foods refused, instead hiding behind the declaration of an employee and forcing Plaintiffs to brief jurisdictional issues unnecessarily as it has done in several other prior matters.

Plaintiffs attempted to avoid briefing on jurisdictional issues: Plaintiffs requested Defendants file their L.R. 3-15 disclosures, set multiple calls with Defendants to try and obtain the identities of any suppliers/indemnitors or other liable Whole Foods entities, and ultimately filed a protective order under the belief that doing so would allow Defendants to disclose the supplier of the Products prior to formal discovery and jurisdictional briefing. (ZC Decl. ¶ 12-17.) Despite Plaintiffs' best efforts, Defendants and their attorneys have been uncooperative.

Given the great lengths Whole Foods has gone to in order to shield itself from liability, the Court should defer ruling on Defendants' motion and grant Plaintiffs leave to take jurisdictional discovery. After jurisdictional discovery,[12] Plaintiffs are hopeful that the parties can come to agreement about the proper entities to be named without any further court intervention or an evidentiary hearing.

In deciding a motion to dismiss for lack of personal jurisdiction, the court has "considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (citing *Data Disc, Inc.*, 557 F.2d at 1285). However, "a district court abuses its discretion if it completely denies a party jurisdictional discovery unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery." *American Civil Liberties Union of Florida, Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (citation omitted).

---

[12] For example, Plaintiffs could conduct the following discovery in order to gain the proper information about Whole Foods corporate structure: serve written discovery and depose Timothy Horn for one half-day; serve limited request for production seeking, e.g., an organizational chart outlining which Whole Foods entities may be liable for the alleged unlawful conduct; serve targeted interrogatories aimed at determining which Whole Foods entities operate at each relevant point in the Products' chain of commerce.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Here, Defendants filed the instant dispositive motion on October 3, 2022, before the Parties conducted their Rule 26(f) conference, before discovery opened, and before either party served their Rule 26 initial disclosures. None of the disclosures Defendants filed on August 29 help either, as Defendants claim that WFMI, the one Whole Foods entity disclosed in all four statements, is not a proper party. As such, Plaintiffs have not had an adequate opportunity to procure records and then take depositions, be it of Defendants or any third-party witnesses necessary to develop jurisdictional facts.

Moreover, not only does the declaration from their litigation paralegal make broad sweeping, conclusory allegations about a complex organization structure, it contains several inaccurate statements. For example, Horn states, "WFMI does not purchase, advertise, market, sell, or distribute, any product in California or any other state." (Dkt. 40, ¶ 5.) But as Plaintiffs allege, and as is stated on the Products' boxes, WFMI is the distributor of the Products. (FAC ¶ 20.) Horn also states, "WFMI does not operate, manage nor control the operations of WFM California, Mrs. Gooch's nor WFM Group" (Dkt. 40, ¶ 6), and "WFMI does not set policies for any Whole Foods Market store, nor does it regulate or assure the uniformity of policies in Whole Foods Market stores." (*Id.* ¶ 7.) But Plaintiffs have reason to believe that WFMI does, at least in part, control the operations of and set policies for the California entities. First, Whole Foods as an organization has moved to centralized purchasing. (ZC Decl., Ex. 6.) Since WFMI is the owner of both Mrs. Gooch's and WFM CA, they likely have influence over the purchasing decisions for those entities. Second, WFMI is the entity that sends supplemental paperwork to new Whole Foods hires alerting them about Whole Foods' employment policies. (ZC Decl. Ex. 8.) Mr. Horn's sworn declaration states: "WFMI has no employees, office space, or telephones," (Dkt. 40, ¶ 4) and it's "simply a holding company." (*Id.* at ¶ 5.) However, the "New Hire Supplemental Paperwork" distributed to employees at the store level in California instructs employees to direct any privacy concerns to the "Privacy Officer" at WFMI, specifically, to the *office* on 550 Bowie Street in Texas, and at the following *phone* number: (512) 477-5566. (ZC Decl. Ex. 8.) Third, Whole Foods' Code of Business Conduct states that it applies to all team members of WFMI "and its subsidiaries." (ZC Decl. Ex. 9.) These facts call the veracity of the Horn Declaration into

question. Thus, the Court should at the very least grant Plaintiffs leave to conduct jurisdictional discovery. *See Harris Rutsky & Co.*, 328 F.3d at 1129.

### G.     The Court Has Subject Matter Jurisdiction Over Plaintiffs' Claims

"CAFA's language favors federal jurisdiction over class actions, and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one." *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015) (quoting *Evans v. Walter Indus.*, 449 F.3d 1159, 1163 (11th Cir. 2006)) (internal quotations omitted). CAFA's legislative history emphasizes that all doubts are to be "resolved 'in favor of exercising [federal] jurisdiction over the case.'" *Evans*, 449 F.3d at 1163 (quoting S. Rep. No. 109-14 at 42.)

Defendants argue that "absent Plaintiffs' alleged nationwide class and defendants WFMI and WFM Group, the FAC does not, on its face, allege minimal diversity." (MTD at 13.) Defendants' argument is moot. As discussed at length *supra*, Defendants' attempt to strike Plaintiffs' nationwide claims fails because it is premature, and because Defendants fail to demonstrate that California's laws materially conflict with the laws of any other states. Thus, Plaintiffs' nationwide claims asserted on behalf of putative class members survive, minimal diversity is preserved, and the home-state controversy exception to CAFA does not apply. *See Swearingen v. Yucatan Foods, L.P.*, 24 F. Supp. 3d 889, 895-96 (N.D. Cal. 2014) (denying motion to dismiss and refusing to apply the "home state" exception). Further, as outlined herein, Plaintiffs have alleged facts that support the exercise of personal jurisdiction over WFMI, which is a Texas corporation. Thus, Plaintiffs are citizens of a state different from at least one defendant, and minimal diversity is preserved for this independent reason.

### V.     <u>IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND</u>

Alternatively, Plaintiffs request leave to amend the complaint to cure any defects. Dismissal of a complaint, without leave to amend, is proper only where "it appears beyond doubt that plaintiff can prove no set of facts that would entitle her to relief." *Smith v. Jackson*, 84 F. 3d 1213, 1217 (9th

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Cir. 1996); *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990) (The Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality.")

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that this Honorable Court follow its reasoning from prior decisions and **DENY**, in its entirety, Defendants' partial motion to dismiss Plaintiffs' SAC.


DATED: October 17, 2022                        **CLARKSON LAW FIRM, P.C.**


                                                 */s/ Zachary T. Chrzan*
                                                Ryan J. Clarkson, Esq.
                                                Zachary T. Chrzan, Esq.

                                                *Attorneys for Plaintiffs*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC